IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* John Doe; | § | |
| STATE OF CALIFORNIA, *ex rel.* | § | |
| John Doe; | § | |
| STATE OF COLORADO *ex rel.* | § | |
| John Doe; | § | |
| STATE OF CONNECTICUT *ex rel.* | § | CIVIL NO. _____ |
| John Doe; | § | |
| STATE OF DELAWARE, *ex rel.* | § | |
| John Doe; | § | |
| DISTRICT OF COLUMBIA, *ex rel.* | § | RELATOR JOHN DOE'S |
| John Doe; | § | ORIGINAL COMPLAINT |
| STATE OF FLORIDA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF GEORGIA *ex rel.* | § | |
| John Doe; | § | FILED UNDER SEAL |
| STATE OF HAWAII *ex rel.* | § | |
| John Doe; | § | |
| STATE OF ILLINOIS *ex rel.* | § | |
| John Doe; | § | |
| STATE OF INDIANA *ex rel.* | § | JURY TRIAL DEMANDED |
| John Doe; | § | |
| STATE OF IOWA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF LOUISIANA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF MARYLAND *ex rel.* | § | |
| John Doe; | § | |
| COMMONWEALTH OF MASSACHUSETTS | § | |
| *ex rel.* John Doe; | § | |
| STATE OF MICHIGAN *ex rel.* | § | |
| John Doe; | § | |
| STATE OF MINNESOTA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF MONTANA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF NEVADA *ex rel.* | § | |
| John Doe; | § | |
| STATE OF NEW HAMPSHIRE *ex rel.* | § | |
| John Doe; | § | |
| STATE OF NEW JERSEY *ex rel.* | § | |
| John Doe; | § | |
| STATE OF NEW MEXICO *ex rel.* | § | |

John Doe;                                           §
STATE OF NEW YORK *ex rel.*                         §
John Doe;                                           §
STATE OF NORTH CAROLINA *ex rel.*                   §
John Doe;                                           §
STATE OF OKLAHOMA *ex rel.*                         §
John Doe;                                           §
STATE OF RHODE ISLAND *ex rel.*                     §
John Doe;                                           §
STATE OF TENNESSEE *ex rel.*                        §
John Doe;                                           §
STATE OF VERMONT *ex rel.*                          §
John Doe;                                           §
STATE OF WASHINGTON *ex rel.*                       §
John Doe;                                           §
COMMONWEALTH OF VIRGINIA *ex rel.*                  §
John Doe;      and                                  §
Doe States 1 – 21 *ex rel.*                         §
John Doe                                            §
                                                    §
         Plaintiffs,                                §
                                                    §
v.                                                  §
                                                    §
                                                    §
                                                    §
                                                    §
CVS HEALTH CORPORATION and                          §
CVS PHARMACY INC.                                   §

Defendants.

## RELATOR JOHN DOE'S ORIGINAL COMPLAINT

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1
II.     INTRODUCTION TO GOVERNMENT PLAINTIFFS ....................................3
III.    PARTIES .............................................................................................................4
        A.      Relator.....................................................................................................4
        B.      Defendants ..............................................................................................5
        C.      Respondeat Superior and Vicarious Liability ........................................5
IV.     JURISDICTION AND VENUE ..........................................................................6
V.      APPLICABLE MEDICAID LAWS ....................................................................6
        A.      Overview of the Medicaid Program........................................................6
        B.      California .................................................................................................9
        C.      Colorado................................................................................................10
        D.      Connecticut ...........................................................................................11
        E.      Delaware ...............................................................................................11
        F.      District of Columbia .............................................................................12
        G.      Florida ...................................................................................................13
        H.      Georgia ..................................................................................................13
        I.      Hawaii ...................................................................................................14
        J.      Illinois ...................................................................................................15
        K.      Indiana...................................................................................................16
        L.      Iowa.......................................................................................................17
        M.      Lousiana ................................................................................................17
        N.      Maryland ...............................................................................................18
        O.      Commonwealth of Massachusets ..........................................................19
        P.      Michigan ...............................................................................................20
        Q.      Minnesota ..............................................................................................21
        R.      Montana .................................................................................................22
        S.      Nevada ...................................................................................................23
        T.      New Hampshire .....................................................................................23
        U.      New Jersey .............................................................................................25
        V.      New Mexico...........................................................................................25
        W.      New York...............................................................................................26
        X.      North Carolina .......................................................................................27
        Y.      Oklahoma...............................................................................................27
        Z.      Rhode Island ..........................................................................................28
        AA.     Tennessee ..............................................................................................29
        BB.     Vermont .................................................................................................30
        CC.     Commonwealth of Virginia ...................................................................30
        DD.     Washington ............................................................................................31
VI.     MEDICARE PART D..........................................................................................32
        A.      Overview of Medicare Part D ................................................................32
        B.      Required Part D Plan Sponsor Certifications.........................................33
        C.      Medicare Part D Usual and Customary Reporting Requirements .........34
VII.    TRICARE, CHAMPVA AND FEHBP REIMBURSEMENT .........................35
VIII.   RELATOR'S DISCOVERY OF DEFENDANTS' FRAUDULENT SCHEME .............36

IX.    REPRESENTATIVE EXAMPLES OF PRICING DISPARITIES ................................... 37
    A.    Fraudulent Reporting of Usual and Customary Charge ......................................... 37
    B.    Representative State Medicaid Spreads ................................................................. 40
        1.    Representative Florida Medicaid Spreads ................................................. 40
        2.    Representative Georgia Medicaid Spreads ............................................... 42
        3.    Representative Illinois Medicaid Spreads ................................................. 43
        4.    Representative Michigan Medicaid Spreads ............................................. 45
        5.    Representative Nevada Medicaid Spreads ................................................. 46
        6.    Representative New Mexico Medicaid Spreads ......................................... 48
        7.    Representative New York Medicaid Spreads ............................................. 49
        8.    Representative Tennessee Medicaid Spreads ............................................ 50
    C.    Specific Patient Claims ....................................................................................... 52
X.    ACTIONABLE CONDUCT BY DEFENDANTS ................................................... 53
    A.    Applicable Law: The False Claims Act ................................................................ 53
    B.    Defendants' Violation of the False Claims Act .................................................... 55
        1.    Presentation of False Claims (31 U.S.C. § 3729(a)(1)(A)) ......................... 55
        2.    Making or Using False Records or Statements to Cause Claim to
              be Paid (31 U.S.C. § 3729(a)(1)(B)) ......................................................... 56
XI.    CAUSES OF ACTION ............................................................................................. 57
    A.    Count I – False Claims (31 U.S.C. § 3729(a)(1)(A)) ............................................. 57
    B.    Count II – False Records or Statements (31 U.S.C. § 3729(a)(1)(B)) ................... 58
    C.    Count III – California False Claims Act ................................................................ 61
    D.    Count IV– Colorado Medicaid False Claims Act .................................................. 63
    E.    Count V– Connecticut False Claims Act ............................................................... 65
    F.    Count VI – District of Columbia False Claims Act ............................................... 67
    G.    Count VII – Delaware False Claims and Reporting Act ......................................... 69
    H.    Count VIII – Florida False Claims Act .................................................................. 72
    I.    Count IX – Georgia State False Medicaid Claims Act ........................................... 74
    J.    Count X – Hawaii False Claims Act ...................................................................... 76
    K.    Count XI – Illinois False Claims Act ..................................................................... 78
    L.    Count XII – Indiana False Claims and Whistleblower Protection Act ................... 80
    M.    Count XIII – Iowa False Claims Act ...................................................................... 82
    N.    Count XIV – Lousiana Medical Assistance Programs Integrity Law ..................... 84
    O.    Count XV – Maryland False Health Claims Act .................................................... 86
    P.    Count XVI – Massachusets False Claims Act ........................................................ 89
    Q.    Count XVII – Michigan Medicaid False Claims Act ............................................. 91
    R.    Count XVIII – Minnesota False Claims Act ........................................................... 93
    S.    Count XIX – Montana False Claims Act ................................................................ 95
    T.    Count XX – Nevada False Claims Act .................................................................... 97
    U.    Count XXI – New Hampshire False Claims Act ................................................... 100
    V.    Count XXII – New Jersey False Claims Act ......................................................... 102
    W.    Count XXIII – New Mexico Medicaid False Claims Act and New Mexico
          Fraud Against Taxpayers Act .............................................................................. 104
    X.    Count XXIV – New York False Claims Act .......................................................... 107
    Y.    Count XXV – North Carolina False Claims Act ................................................... 109
    Z.    Count XXVI – Oklahoma Medicaid False Claims Act ......................................... 111

      AA.    Count XXVII – Rhode Island State False Claims Act...........................................113
      BB.    Count XXVIII – Tennessee Medicaid False Claims Act.....................................115
      CC.    Count XXIX – Vermont Fraud Against Taxpayers Act .....................................117
      DD.    Count XXX – Virginia Fraud Against Taxpayers Act.........................................120
      EE.    Count XXXI – Washington State Medicaid Fraud False Claims Act .................122
      FF.    Count XXXII – Common Fund Relief.................................................................124
XII.    DEMAND FOR JURY TRIAL .................................................................................125
XIII.    DOCUMENTARY EVIDENCE .................................................................................125

1.    On behalf of the United States of America, the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Vermont, and Washington, the Commonwealths of Massachusetts and Virginia, the District of Columbia (collectively "Qui Tam States"), Doe States 1 – 21 ("Doe States")[1] and on his own behalf, Plaintiff/Relator John Doe brings this action pursuant to the False Claims Act (FCA), 31 U.S.C. §3729-3723, against Defendants CVS Health Corporation and CVS Pharmacy, Inc. ("CVS" or "Defendants"). Relator seeks to recover all damages, penalties, and other remedies established by the False Claims Act on behalf of the United States and himself. Relator also seeks to recover all damages, penalties, and other remedies established by state statutes in each of the Qui Tam States on behalf of those States and himself. Relator served a voluntary pre-filing disclosure statement on November 22, 2016 and is voluntarily serving an original disclosure statement simultaneously with the filing of this complaint under seal. Relator would respectfully show the following:

## I.    INTRODUCTION

2.    This suit concerns Defendants fraudulently reporting inflated Usual and Customary ("U&C") prices to government health care programs in order to obtain higher reimbursements for prescription drugs. Defendants reported this information knowing that government health care programs, such as Medicare and Medicaid, would use the information as a basis for reimbursing pharmacy providers for providing prescription drugs to beneficiaries.

---

[1] Plaintiff Doe States 1-21 include the states that subsequent to the initiation of this action enact *qui tam* statutes that include the right for private citizens to initiate *qui tam* actions.

3.      CVS is one of the largest retail pharmacy chains in the United States. After acquiring all of Target Corporation's pharmacies in early 2016,[2] CVS implemented the ScriptSave Value Prescription Savings Card program ("ScriptSave"), in which it offers all uninsured customers deep discounts on pharmaceutical drugs without requiring them to pay an enrollment fee or fill out an application. *See* Exhibit 1 (January 2016 letter to pharmacy customers); *see also* Exhibit 2 at 22 (Pharmacy Operating Agreement between Target and CVS). CVS offers discounts of up to 75%, and all prescription drugs, both brand and generic, are eligible for these discounts. Exhibit 1. When a cash-paying customer fills a prescription, CVS pharmacists enter a code into the computer system that automatically applies the discount at the time of checkout and enrolls the customer in the ScriptSave program if the customer is not already enrolled. *See* Exhibit 3 (Frequently Asked Questions regarding discontinuation of Target Prescription Savings Program and the new ScriptSave program); *see also* Exhibit 4 (January 27, 2016 Email to pharmacists with instructions for processing claims).

4.      In contravention of state and federal regulations, CVS does not offer the same discounted prices for members of the public covered by government health care programs, such as Medicaid and Medicare. When submitting claims to federal and state health care programs, CVS reports the cash price of the drug as its usual and customary charge to the public.

5.      CVS has a strong financial incentive to both retain existing Target pharmacy customers and bring in more. CVS's Pharmacy Operating Agreement with Target requires it to pay Target millions of dollars if it fails to meet the "script growth performance target" specified in the parties' agreement. *See* Exhibit 2 at 24. In an effort to increase prescription volume, Target offers $5.00 gift cards to patients who get flu shots from CVS pharmacies located inside Target

---

[2] All pharmacies located inside Target stores are now owned and operated by CVS. *See* Exhibit 2 (Pharmacy Operating Agreement between Target and CVS).

stores. If the patient getting the flu shot normally fills his or her prescriptions at a different pharmacy, CVS management instructs its pharmacists to call those patients and urge them to switch to CVS for all prescription needs. In so doing, CVS causes government programs such as Medicaid to incur even more losses, because the patients who switch to CVS may have previously been filling prescriptions at pharmacies that do not charge government programs in excess of the U&C charge.

6.    As set forth below, (i) state and federal laws prohibit a pharmacy provider from billing government health care programs in excess of its U&C charge to the general public, (ii) pharmacies certify in each claim submitted to government health care programs that the claim contains information that is "true, complete and accurate," and (iii) payment of claims is conditioned on the pharmacy provider submitting true, complete, and accurate information. Furthermore, because federal and state health care programs prohibit reimbursement in excess of a pharmacy's usual and customary charge, CVS's fraudulent inflation of its usual and customary charge caused these programs to pay false or fraudulent claims.

7.    By concealing ScriptSave discounts and reporting inflated usual and customary charges for the drugs it dispenses, CVS has cheated federal and state health care programs by forcing them to pay significantly more for the same drugs. CVS's discount program and pricing scheme have caused significant monetary damages to the Government Plaintiffs.

## II.    INTRODUCTION TO GOVERNMENT PLAINTIFFS

8.    The Government Plaintiffs in this lawsuit are the United States of America, the States of California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Illinois, Indiana, Iowa, Louisiana, Maryland, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Oklahoma, Rhode Island, Tennessee, Vermont,

and Washington, the Commonwealths of Massachusetts and Virginia, the District of Columbia, and Doe States 1-21.

9.      Plaintiff Doe States 1-21 include the states that subsequent to the initiation of this action enact *qui tam* statutes that include the right for private citizens to initiate *qui tam* actions, or whose previously enacted statutes become effective after the filing of Relator's complaint.  The Doe States 1-21 include the States of Alabama, Alaska, Arizona, Arkansas, Idaho, Kansas, Kentucky, Maine, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oregon, Pennsylvania, South Carolina, South Dakota, Utah, West Virginia, Wisconsin, and Wyoming.

### III.    PARTIES

#### A.    Relator

10.      Relator is a resident of Virginia. After receiving his pharmacy degree in 2007, Relator worked at multiple retail pharmacies, including one that he owned and operated. Relator began working as a pharmacist for Target in 2011. CVS acquired Target's pharmacy business in January 2016, and all pharmacists previously employed by Target are now employed by CVS, including Relator.

#### B.    Defendants

11.      Defendant CVS Health Corporation is a corporation with its principal place of business located in Woonsocket, Rhode Island. CVS Health Corporation owns CVS Pharmacy, Inc., which operates over 9,500 retail pharmacies in the United States. CVS Health Corporation conducts extensive business nationwide. The registered agent for CVS Health Corporation is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801.

12.      Defendant CVS Pharmacy, Inc. is a corporation with its principal place of business located in Woonsocket, Rhode Island. CVS is one of the largest pharmacy retail chains in the

United States and conducts extensive business nationwide. The registered agent for CVS Pharmacy, Inc. is C T Corporation System, 1015 15th St NW, Suite 1000, Washington D.C. 20005.

### C.    Respondeat Superior and Vicarious Liability

13.    Defendants CVS Health Corporation and CVS Pharmacy, Inc. are related entities sharing common employees, offices, and business names such that they are jointly and severally liable under legal theories of respondeat superior.  Further, the past, present, and continuing relations and dealings by and between these related entities are so inextricably intertwined that for purposes of this suit, some or all of them can and should be considered as a single entity at law and equity.

14.    Defendants share a common principal place of business located in Woonsocket, Rhode Island. According to CVS Health Corporation's 2015 10-K filed with the Securities and Exchange Commission (SEC), "When a customer fills a prescription in a retail pharmacy, the pharmacy sends prescription data electronically to [CVS Health Corporation] from the point-of-sale. This data interfaces with [CVS Health Corporation's] proprietary prescription management systems, which verify relevant plan member data and eligibility, while also performing a drug utilization review to help evaluate clinical appropriateness and safety and confirming that the pharmacy will receive payment for the prescription."[3]

15.    Furthermore, the Pharmacy Operating Agreement between Target and CVS Pharmacy, Inc. states, "CVS Health Corporation ("**Parent**") hereby guarantees the full payment of any financial obligations of CVS under this Agreement and the Master Occupancy Agreement, provided, however, that Target shall initially seek payment from CVS [Pharmacy, Inc.] of all

---

[3] *See* United States Securities and Exchange Commission, CVS Health Corporation Form 10-K (2015), p. 8, *available at http://www.sec.gov/Archives/edgar/data/64803/000006480316000074/cvs-20151231x10k.htm.*

financial obligations required under this Agreement or the Master Occupancy Agreement." *See* Exhibit 2 at 44 (emphasis in original).

16.     Defendant CVS Pharmacy, Inc. is a mere instrumentality and/or agent of CVS Health Corporation.  Without CVS Pharmacy, Inc., CVS Health Corporation would have been forced to perform the services of CVS Pharmacy, Inc.

## IV.    JURISDICTION AND VENUE

17.     Jurisdiction and venue are proper in the District of Columbia pursuant to the False Claims Act, because Relator's claims seek remedies on behalf of the United States for multiple violations of 31 U.S.C. § 3729 in the United States by the Defendants, some of which occurred in the District of Columbia. The Defendants engage in business in the District of Columbia and operate twenty-six pharmacies.

18.     All Defendants are subject to the general and specific personal jurisdiction of this Court pursuant to 31 U.S.C. § 3732(a) in that the claims for relief in this action are brought on behalf of the United States for multiple violations of 31 U.S.C. § 3729. Pendent jurisdiction is also proper over Relator's state claims under 18 U.S.C. § 3732 and 28 U.S.C. § 1367.

## V.    APPLICABLE MEDICAID LAWS

### A.    Overview of the Medicaid Program

19.     Medicaid was established by Title XIX of the Federal Social Security Act, 42 U.S.C. §§ 1396–1396w-5, and is a joint federal and state program that provides health care benefits for certain groups, primarily the poor and disabled.

20.     The federal Medicaid statute sets forth the minimum requirements for state Medicaid programs to qualify for federal funding.  *See* 42 U.S.C. § 1396a.  Within broad national guidelines established by federal statutes, regulations, and policies, each state (1) establishes its own eligibility standards; (2) determines the type, amount, duration, and scope of services; (3) sets

the rate of payment for services; and (4) administers its own program. 42 C.F.R. § 430.0. All states

participating in the Medicaid program must submit a State Plan to the Centers for Medicare and

Medicaid Services (CMS) for approval. 42 U.S.C. § 1396a. "[I]n the case of a State plan that

provides medical assistance for covered outpatient drugs (as defined in section 1396r-8(k) of this

title), [it shall] comply with the applicable requirements of section 1396r-8 of this title." 42 U.S.C.

§ 1396a(a)(54); *see also* 42 C.F.R. §§ 447.500–447.520 ("Payment for Drugs").

21.     In order to receive federal reimbursement of state Medicaid program costs, each

state Medicaid program must assure that: (i) "[i]n the aggregate, its Medicaid expenditures for

multiple source drugs, identified and listed in accordance with § 447.514(a), are in accordance

with the upper limits specified in § 447.514(b)," and (ii) "[i]n the aggregate, its Medicaid

expenditures for all other drugs are in accordance with § 447.512." 42 C.F.R. § 447.518(b)(1).

22.     With regard to the first assurance, the federal government may establish a Federal

Upper Limit (FUL) for "multiple source"[4] drugs that is not less than "175 percent of the weighted

average (determined on the basis of utilization) of the most recently reported monthly average

manufacturer prices for pharmaceutically and therapeutically equivalent multiple source drug

products that are available for purchase by retail community pharmacies on a nationwide basis."

42 U.S.C. 1396r-8(e)(4) and (5).

23.     As to the second assurance, 42 C.F.R. § 447.512 mandates that in order for

Medicaid to reimburse claims for brand name drugs and generic drugs without an established FUL,

the state's aggregate payments must not exceed the lower of (1) the pharmacy's actual acquisition

cost plus a reasonable dispensing fee; or (2) the pharmacy's "usual and customary charges to the

general public" for the drug. 42 C.F.R §447.512(b).

---

[4] "Multiple source" or "multi-source" drugs are generic drugs.

24.     Additionally, for generic or multiple source drugs, states may establish their own payment ceilings known as the maximum acquisition cost, or "MAC."  When multiple generic equivalent drugs are available, states have the option of imposing a MAC that sets a cap on the reimbursement payment for generic versions of the same drug.  As establishing a MAC is optional, states do not necessarily adopt a MAC for every available generic drug. Under the MAC formula, states establish a single price for each generic regardless of the manufacturer of the generic.

25.     Historically, a pharmacy's U&C price would be much higher than the FUL, MAC, or acquisition cost; therefore, pharmacies were almost always reimbursed at one of the lesser reimbursement formula rates of FUL, MAC, or the acquisition cost. Defendants, however, do not report their discounted prices under the ScriptSave program as their U&C prices, as required by state and federal statutes and regulations, and the U&C charge submitted often exceeds the FUL, MAC, and acquisition cost.

26.     When a pharmacy submits a Medicaid claim with a U&C charge that exceeds the maximum amount a state will pay for a drug (MAC), the state's Medicaid program will reimburse at the maximum amount. Therefore, when CVS does not report its discounted ScriptSave price as its U&C charge, it is causing the state's Medicaid program to pay the difference between what it should have paid (the lower U&C price) and its maximum price (MAC).

27.     As set forth below, each state on whose behalf Relator brings this action has enacted regulations prohibiting its Medicaid program from reimbursing a pharmacy more than the U&C price for a medication. Furthermore, each state requires pharmacies to include their U&C price as part of Medicaid claim submissions and also requires that all information submitted by pharmacies be truthful and accurate in order for it to pay the claims.

**B.      California**

28.      The California Department of Health Care Services administers California's Medicaid program ("Medi-Cal"). California's Medi-Cal Act prohibits reimbursement in excess of the pharmacy's reported usual and customary charge. *See* CAL. WELF. & INST. CODE § 14105.45(b); *see also* CAL. WELF. & INST. CODE § 14105.455(e) ("Payment to pharmacy providers shall be the lower of the pharmacy's usual and customary charge or the reimbursement rate pursuant to subdivision (b) of Section 14105.45."); *see also* CAL. CODE REGS. tit. 22, § 51513(b)(1)(A) ("The price charged to ['Medi-Cal'] shall not exceed that charged to the general public."). California defines "usual and customary charge" as the lower of the following:

a.    The lowest price reimbursed to the pharmacy by other third-party payers in California, excluding Medi-Cal managed care plans and Medicare Part D prescription drug plans.

b.    The lowest price routinely offered to any segment of the general public.

CAL. WELF. & INST. CODE § 14105.455(b).

29.      California requires all pharmacy providers to "submit their usual and customary charge when billing the Medi-Cal program for prescribed drugs." CAL. WELF. & INST. CODE § 14105.455(a). Importantly, California requires that all information submitted by pharmacies on Medi-Cal's pharmacy claim form (Form 30-1) be truthful and accurate and requires those submitting the forms to sign a certification stating, "This is to certify that the information contained above is true, accurate, and complete and that the provider has read, understands, and agrees to be bound by and comply with the statements and conditions contained on the back of this form." *See* Exhibit 5 (Medi-Cal Pharmacy Claim Form 30-1).

30.      California also requires pharmacy providers to submit a Usual and Customary Rates Report (Form MC 3152) on an annual basis in accordance with CAL. WELF. & INST. CODE § 14105.455. *See* Exhibit 6 (Medi-Cal Form MC 3152). The form requires providers to sign a

9

certification stating in part, "By signing below, the provider acknowledges that the above information is required by Medi-Cal to report Usual & Customary Rates as defined by W & I Code 14105.455 and that the information contained above is true, accurate, and complete. The provider also acknowledges that any falsification, or concealment of material fact, may be prosecuted under Federal and/or state laws . . . ." *Id.*

31.    With regard to discount programs, such as the one in the instant case, Medi-Cal's Pharmacy Manual states:

> DCHS is aware that certain pharmacies engage in various advertising promotions that essentially result in some form of discount for their customers. Examples include, but are not limited to, the offering of price discounts, cash rebates and free prescriptions.
>
> Pharmacy providers offering such discounts to the general public <u>must</u> be available on the same terms and conditions to Medi-Cal customers. Failure to do so may result in billing the Medi-Cal program more than the usual and customary amount charged to the general public for the same service and is prohibited by *California Code of Regulations* (CCR), Title 22, Sections 51480 and 51513(b)(1)(A), (c) and in accordance with Title 42, *Code of Federal Regulations*, Part 447.331.

*See* Exhibit 7 at 9 (Excerpt on reimbursement from Medi-Cal Provider Manual).

**C.    Colorado**

32.    The Colorado Department of Health Care Policy and Financing administers Colorado's Medicaid program. Colorado regulations prohibit Medicaid reimbursement in excess of the provider's usual and customary charge. 10 COLO. CODE REGS. § 2505-10 8.800.13. "Usual and customary charge" is defined as the "reimbursement amount the provider charges the general public to pay for a drug." 10 COLO. CODE REGS. § 2505-10 8.800.1.

33.    Providers are required to include their usual and customary charge on every claim. 10 COLO. CODE REGS. § 2505-10 8.800.10.B. "All claims sent electronically must contain a

certification field to indicate that the sender verifies that submitted information is true and correct."
*See* Exhibit 8 at 10 (Colorado Medical Assistance Program, General Provider Information).

### D.    Connecticut

34.    The Connecticut Department of Social Services administers Connecticut's
Medicaid program. State regulations prohibit Medicaid reimbursement in excess of the provider's
usual and customary charge. CONN. AGENCIES REGS. §§ 17-2-97, 17-134d-81(i). "Usual and
customary Charge to the General Public" is defined as "a charge which will be made for the
particular prescription by the provider to the patient group accounting for the largest number of
non-Medicaid prescriptions." CONN. AGENCIES REGS. § 17-134d-81(b)(21); *see also* CONN.
AGENCIES REGS. § 17-2-95(4).

35.    Connecticut requires providers to factor discounts offered to the public into the
usual and customary charge submitted on the claim and further requires that providers bill
Medicaid no more than that charge:

> A pharmacy provider enrolled in any medical assistance program
> administered by the Department of Social Services, when billing the
> department for a good or service, shall bill the department the lowest
> amount accepted from any member of the general public who participates
> in the pharmacy provider's savings or discount program. For purposes of
> this section, 'savings or discount program' means any program, club or
> buying group offered by a pharmacy provider to any member of the general
> public for the purpose of obtaining a lower charge for any good or service
> than the charge made to any member of the general public who does not
> participate in such program.

CONN. GEN. STAT. § 17b-226a.

### E.    Delaware

36.    The Delaware Department of Health and Social Services (DHSS) administers
Delaware's Medicaid program. Delaware regulations prohibit Medicaid reimbursement in excess
of a provider's usual and customary charge. *See* Exhibit 9 (Provider Policy Manual, Pharmacy, §

4.1.4). Delaware's Medicaid Provider Policy Manual defines "usual and customary" charge as **the lower of the** (*i*) amount charged to a cash paying customer, (*ii*) **amount charged to customers enrolled in the provider's discount program**, (*iii*) contracted rates with Delaware State employees groups, or (*iv*) contracted rates for any Federal employee groups. *Id.* (emphasis added).

37.     All providers submitting claims for Medicaid reimbursement are required to bill DHSS using their usual and customary charge. *See* Exhibit 10, § 1.13.1 (Provider Policy Manual, General Policy). Moreover, "[p]roviders are responsible for the accuracy, truthfulness, and completeness of all claims" submitted for reimbursement. *Id.* at § 1.6.2.

### F.    District of Columbia

38.     The Department of Health Care Finance (DHCF) administers the Medicaid program in the District of Columbia. District regulations require providers to submit their usual and customary charge to the general public and prohibit Medicaid reimbursement in excess of that amount. *See* D.C. Mun. Regs. tit. 29, § 2710.5 ("Reimbursement for pharmacy claims submitted by a community or retail pharmacy provider shall be reimbursed at the lower of the following … The pharmacy's usual and customary charge to the general public.").

39.     The District requires providers to "[f]ully comply with any applicable District, state and federal laws or regulations governing the provision and reimbursement of pharmacy services" in order to participate in DC Medicaid. *See* D.C. Mun. Regs. tit. 29 § 2701.1; *see also* 48 C.F.R. § 455.18 (Medicaid claims forms must contain following certification: "This is to certify that the foregoing information is true, accurate, and complete.")

40.     Furthermore, the DC Medicaid provider enrollment application requires providers to attest to the following: "I agree that the receipt by the District of Columbia Medicaid program of the first and each succeeding claim for payment from me will be the Medicaid program's understanding of my declaration that the provisions of this Agreement and supplemental provider's

manuals and instructions have been understood and complied with." *See* Exhibit 113 (Department of Health Care Finance Medicaid Provider Agreement, signature page).

### G.    Florida

41.    The Florida Agency for Health Care Administration administers Florida's Medicaid program. Florida regulations prohibit reimbursement in excess of the pharmacy's usual and customary charge. *See* FLA. ADMIN. CODE § 59G-4.251(3). Florida defines "usual and customary charge" as the "average charge to all other customers in any quarter for the same drug, quantity, and strength." FLA. ADMIN. CODE § 59G-4.251(2).

42.    Florida requires that all providers include their usual and customary charge as part of each claim submitted for reimbursement. *See* Exhibit 11 at 3-17, 3-27 (Florida Medicaid Prescribed Drugs Services Coverage, Limitations and Reimbursement Handbook, Chapter 3) (Instructions for completing pharmacy claim, which state, "Enter the pharmacy's usual and customary charge. The provider must ensure that the average charge to Medicaid does not exceed the average charge to all other customers during the same calendar quarter for the same drug, quantity and strength.").

43.    Florida requires that all information included in a Medicaid claim be truthful and accurate. *See* Exhibit 11 at 3-9 (Stating that only "clean" claims will be paid and defining "clean" claims as those that have been accurately and fully completed."); *see also* Exhibit  12 at 5-4 (Florida Medicaid Provider General Handbook, Chapter 5) ("When presenting a claim for payment under the Medicaid program, a provider has an affirmative duty to . . . present a claim that is true and accurate . . . .").

### H.    Georgia

44.    The Georgia Department of Community Health (DCH) administers Georgia's Medicaid program and establishes the rules and regulations governing the program. *See* GA. CODE

ANN. § 49-4-142(a) (2009) ("The department is authorized to establish the amount, duration, scope, and terms and conditions of eligibility for and receipt of such medical assistance as it may elect pursuant to this article. Further, the department is authorized to establish such rules and regulations as may be necessary or desirable in order to execute the state plan and to receive the maximum amount of federal financial participation in expenditures made pursuant to the state plan.").

45.     DCH prohibits reimbursement to a pharmacy provider in excess of that pharmacy's usual and customary charge. *See* Exhibit 13, § 1001, X-1 (Part II, Policies and Procedures for Pharmacy Services) (Setting forth basis for reimbursement in accordance with 42 C.F.R. §§ 447.331 and 447.332). DCH requires all providers to submit their usual and customary charge with each Medicaid claim. With regard to usual and customary charges, the DCH manual states:

> For-profit providers must submit their usual and customary charge when billing the Division for Medicaid prescriptions. The Division defines usual and customary as the lower of the lowest price reimbursed to the pharmacy by other third party payers (including HMO's); or, the lowest price routinely offered to any segment of the general public. For example, if a pharmacy offers discounts to Senior Citizens or children, the same discounted price must be billed to the Division.

Exhibit 13, § 1001, X-2.

46.     DCH also requires providers to certify that all information in a Medicaid claim is truthful, accurate, and complete. *See* Exhibit 14, § 2(B)(4)(A) (Medicaid Provider Statement of Participation) ("For each claim submitted by or on behalf of Provider, Provider shall certify each claim for truth, accuracy, and completeness, and shall be responsible for research and correction of all billing discrepancies without cost to the Department.").

**I.     Hawaii**

47.     The Hawaii Department of Human Services, Med-QUEST Division, administers Hawaii's Medicaid program. Hawaii regulations prohibit Medicaid reimbursement in excess of a

provider's usual and customary charge to the general public. HAW. CODE R. § 17-1739.1-11; *see also* Exhibit 15, § 19.1.8 (Hawaii Medicaid Provider Manual, Chapter 19, Pharmacy Services).

48.    Providers are prohibited from submitting a charge to Med-QUEST that exceeds the usual and customary charge to the general public. *See* Exhibit 16, § 2.2(d) (Hawaii Medicaid Provider Manual, Chapter 2, Provider Requirements). Providers must certify that all claims submitted contain information that is true, accurate, and complete. *Id.* at § 2.6(d); *see also* Exhibit 17 (Hawaii Medicaid Prescription Drug Claim Form 204).

### J.    Illinois

49.    The Illinois Department of Healthcare and Family Services ("Department") administers the Illinois Medicaid program. Per state regulations, Illinois Medicaid reimburses pharmacy claims at the lower of the Department's maximum price or the pharmacy provider's usual and customary charge. *See* ILL. ADMIN. CODE. tit. 89, § 140.445; *see also* Exhibit 18, § P-203.1, HFS-P203(1) (Handbook for Providers of Pharmacy Services, Chapter P-200, Policy and Procedures for Pharmacy Services). Illinois defines "usual and customary charge" as the "amount a provider would charge cash customers for a prescription, exclusive of sales tax." *Id.* at § P-202.1.

50.    An Illinois Medicaid pharmacy provider must agree to "provide services and supplies to patients in the same quality and mode of delivery as are provided to the general public, and charge the Department in amounts not to exceed the provider's usual and customary charges." Exhibit 19, § 101.1 (Handbook for Providers of Medical Services, Chapter 100, General Policy and Procedures).

51.    As the regulation set forth below provides, Illinois requires pharmacies to give Medicaid recipients the same discounts provided to the general public:

> If a pharmacy gives discounts to the general public, it must provide the same to Public Aid recipients. If discounts are allowed only to a specific group of people, they shall be extended to a recipient if he or she is a member of the

> special discount group. Public Aid recipients can constitute a special group
> and receive a discount, but they cannot be excluded from a discount group
> just because they are recipients.

ILL. ADMIN. CODE. tit. 89 § 140.447(b); *see also* Exhibit 18 at § 202.1.

52.    Illinois requires pharmacy providers to include the amount charged on claims for reimbursement, and providers are prohibited from charging Medicaid more than the usual and customary charge. *See* Exhibit 18 at § 202.1. All providers submitting claims for reimbursement, whether on paper or electronically, must certify that all information contained therein is accurate. *See* Exhibit 19, § 130.5; *see also* Exhibit 18 (Basic provisions requiring pharmacies to adhere to all requirements set forth in the Handbook for Providers of Medical Services).

**K.    Indiana**

53.    The Indiana Family and Social Services Administration administers Indiana's Medicaid program. Indiana regulations prohibit the Medicaid program from reimbursing a pharmacy claim in excess of the pharmacy's usual and customary charge, which Indiana requires providers to include on pharmacy claims for reimbursement. *See* 405 IND. ADMIN. CODE 5-24-4(a); *see also* Exhibit 20, 10-11 (Indiana Health Coverage Programs, Provider Reference Module, Pharmacy Services, Section 2: Pharmacy Coverage and Reimbursement). With regard to "usual and customary charge, Indiana's Provider Reference Module states:

> Providers must bill the program for covered services with only the
> provider's usual and customary charge to the general public, including any
> special pricing (for example, $4 generic programs), for the covered service.

*Id.* at 12.

54.    For each and every claim submitted, pharmacy providers must sign the following certification:

> This is to certify that the foregoing information is true, accurate, and
> complete. I understand that payment and satisfaction of this claim will be
> from federal and state funds, and that any falsification of claims, statements

> or documents, or concealment of material fact may be prosecuted under
> federal or state laws. . . . I further recognize that any difference of opinion
> concerning the charges and/or allowance for this claim shall be adjudicated
> as specified in the Provider Manual.

Exhibit 21 (Indiana Health Coverage Programs Drug Claim Form).

### L.    Iowa

55.    The Iowa Department of Human Services administers Iowa's Medicaid program. Iowa regulations specify that the "usual and customary charge" is the charge submitted by the provider, and Medicaid reimbursement in excess of the usual and customary charge is prohibited. IOWA ADMIN. CODE r. 441-79.1(8); *see also* Exhibit 22, § D.1, 111 (Iowa Medicaid Provider Manual, Chapter III. Provider Specific Policies, Prescribed Drugs). Iowa's Medicaid manual defines "usual and customary charge" as the "fee that the provider typically charges the general public for the product or service." *Id.* at § A.1, 5. Providers are required to include the usual and customary charge on all claims submitted for Medicaid reimbursement. *Id.* at § E, 118, 125.

56.    The Iowa Medicaid Point of Sale Agreement, which providers must sign in order to submit claims, requires the provider to agree that it shall "correctly enter the claims data, monitor the data, and certify that the data is correct." *See* Exhibit 23 (Iowa Medicaid Point of Sale Agreement). Providers must also agree to "abide by all Federal and State statutes, rules, regulations, and manuals governing the Iowa Medicaid Program and those conditions as set out in the Medical Assistance Provider Agreement entered into previously." *Id.*

### M.    Louisiana

57.    The Louisiana Department of Health and Hospitals administers Louisiana's Medicaid program. Louisiana regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge to the general public. *See* Exhibit 24, § 37.6.1 (Medicaid Services Manual, Chapter 37, Pharmacy Benefits Management Services Manual). Louisiana

regulations define "general public" as "all other non-Medicaid prescriptions, including third-party insurance, pharmacy benefit management plans, and cash." *Id.* at § 37.6.2; *see also* LA. ADMIN. CODE, tit. 50, § 935(B).

58.    Pharmacies are required to indicate their usual and customary charge to the general public on claims made to Medicaid for prescription services. *Id.* at § 37.6.2. All providers enrolling as Medicaid providers must sign an agreement in which the provider attests that "all claims submitted under the conditions of this Agreement are certified to be true, accurate, and complete." Exhibit 25 (PE-50 Addendum – Provider Agreement).

59.    Providers submitting claims electronically must also certify the following on an annual basis: "I have reviewed the claims information submitted and certify that it is true, accurate and complete." Exhibit 26, 44 (Louisiana Medicaid EDI General Companion Guide with sample annual certification form); *see also* Exhibit 27, § 1.4 (Medicaid Services Manual, Chapter 1, General Information and Administration Provider Manual) (stating annual certification requirement).

### N.    Maryland

60.    The Maryland Department of Human Services (DHS) administers Maryland's Medicaid program. Maryland regulations prohibit Medicaid reimbursement in excess of a pharmacy's usual and customary charge to the general public for similar prescriptions. *See* MD. CODE REGS. 10.09.03.07; *see also* Exhibit 28, 38 (Maryland Pharmacy Programs Claims Processing Manual, § VII Maryland Medicaid Program Specifics, Pricing).

61.    A pharmacy is required to bill DHS its usual and customary charge on all claims submitted for Medicaid reimbursement. MD. CODE REGS. 10.09.03.07; *see also* Exhibit 29, 156, 159 (Maryland Pharmacy Programs Claims Processing Manual, Appendix A: Payer Specifications). The terms of DHS's Medical Assistance Program Provider Agreement require

providers to comply with federal and state laws and all of DHS's policies and procedures, including "submitting accurate, complete and timely claims." Exhibit 30, § I. A (Provider Agreement for Participation in Maryland Medical Assistance Program). Providers must also "accept responsibility for the validity and accuracy of all claims" submitted to DHS, whether submitted on paper, electronically, or through a billing service. *Id.* at I. I.

### O.    Commonwealth of Massachusetts

62.    The medical assistance program in Massachusetts, MassHealth, is administered by the Massachusetts Executive Office of Health and Human Services. State regulations prohibit the MassHealth program from reimbursing a pharmacy claim in excess of the pharmacy's usual and customary charge. 114.3 MASS. CODE REGS. 31.04. Massachusetts regulations define "usual and customary charge" as the "lowest price that a Provider charges or accepts from any payer for the same quantity of a drug on the same date of service, in Massachusetts, including but not limited to the shelf price, sale price, or advertised price for any drug including an over-the-counter drug. 114.3 MASS. CODE REGS. 31.02; *see also* 130 MASS. CODE REGS. 406.402 (same).

63.    MassHealth requires providers to submit claims electronically using the Pharmacy Online Processing System (POPS). Exhibit 31, 5.3-1 (MassHealth Provider Manual Series, Subchapter 5, Part 3, Billing MassHealth). The POPS Billing Guide requires providers to submit their usual and customary charge with each claim. *See* Exhibit 32, at 1, 17, 66 (MassHealth Pharmacy Online Processing System (POPS) Billing Guide).

64.    MassHealth requires providers to sign contracts to participate in the medical assistance program and receive reimbursement. 130 MASS. CODE REGS. 450.223. Per Massachusetts regulations, all providers must agree to comply with all laws, rules, and regulations governing MassHealth. *Id.* Furthermore, with each and every claim submission, the provider

makes the following relevant certifications, whether or not such certifications are reproduced on the claim form:

- The payment claimed does not exceed the maximum amount payable in accordance with the applicable fees and rates or amounts established under a provider contract or regulations applicable to MassHealth payment.

- The information submitted in, with, or in support of the claim is true, accurate, and complete.

*Id.*

### P.    Michigan

65.    The Michigan Department of Health and Human Services administers Michigan's Medicaid program. Michigan prohibits Medicaid reimbursement in excess of a provider's usual and customary charge. *See* Exhibit 33, § 13.1, 23 (Michigan Medicaid Provider Manual, Pharmacy). Michigan's Medicaid Provider Manual defines "usual and customary charge" as a pharmacy's charge to the general public and further states, "The sum of charges for both the product cost and dispensing fee must not exceed a pharmacy's U&C charge for the same or similar service. The U&C charge must reflect all advertised discounts, special promotions, or other programs initiated to reduce prices for product costs available to the general public or to a special population." *Id.*

66.    Providers are prohibited from submitting claims for services in excess of the usual and customary charge, which must factor in discounts given by the provider to members of the public. *See* Exhibit 34, § 12.2, 35 (Michigan Medicaid Provider Manual, General Information for Providers) ("Providers cannot charge Medicaid a higher rate for a service rendered to a beneficiary than the lowest charge that would be made to others for the same or similar service. This includes advertised discounts, special promotions, or other programs to initiate reduced prices made available to the general public or a similar portion of the population."); *see also* MICH. COMP.

LAWS ANN. § 400.111b(12) ("A provider shall not charge the state more for a service rendered to a medically indigent individual than the provider's customary charge to the general public or another third party payer for the same or similar service.").

67.    A provider's signature on a claim submitted to Michigan Medicaid constitutes a certification that the claim is "true, accurate, and contains no false or erroneous information." Exhibit 34, § 12.8, 38. Any provider who submits a claim for reimbursement that is higher than the provider's usual and customary charge is subject to suspension or termination from the Medicaid program. *See* MICH. COMP. LAWS ANN. § 400.111e(3)(h).

### Q.    Minnesota

68.    The Minnesota Department of Human Services administers the state's Medicaid program. Minnesota regulations prohibit the Medicaid program from reimbursing a pharmacy in excess of the pharmacy's usual and customary charge. MINN. STAT. § 256B.0625, Subdivision 13e; *see also* MINN. R. 9505.0340, Subpart 7. Minnesota defines usual and customary charge as "the charge of the provider to the type of payer, other than recipients or persons eligible for payment on a sliding fee schedule, that constitutes the largest share of the provider's business." MINN. R. 9505.0175, Subpart 49.

69.    Providers are required to bill the Medicaid program the usual and customary charge for the dispensed drug and include that charge on all pharmacy claims. MINN. R. 9505.0340, Subpart 6. Providers are also required to:

- Assume full responsibility for the accuracy of claims submitted to DHS in accordance with the certification requirements of 42 C.F.R. § 455.18 and Minnesota Statutes 256B.27, subd. 2.

- Submit claims at no more than the provider's usual and customary fee to the general public.

Exhibit 35, Items 8, 9 (Minnesota Health Care Programs Provider Agreement).

### R.      Montana

70.      The Montana Department of Public Health and Human Services (DPHHS) administers Montana's Medicaid program. Montana regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. *See* MONT. ADMIN. R. § 37.86.1105; *see also* Exhibit 36, 6.1 (Montana DPHHS Prescription Drug Program Manual). DPHHS's Prescription Drug Program manual defines "usual and customary charge" as the "price the provider most frequently charges the general public for the same drug," inclusive of "discounts advertised or given (including but not limited to cash rebate, monetary price discount, coupon of value) to any segment of the general public." *Id*.

71.      Providers are required to bill Medicaid at their usual and customary charge on every claim submitted for reimbursement. *Id.* at 7.3; *see also* Exhibit 37 (Montana Medicaid Pharmacy Claim Form MA-5) (instructing provider to enter the provider's usual and customary charge in block 16 of pharmacy claim form MA-5). Montana's Form MA-5 requires those submitting a claim to certify that the amounts listed in the claim are due. *See* Exhibit 37.

72.      Any person submitting a claim to DPHHS "is considered to represent to the department, to the best of the person's knowledge and belief, that the [claim] is genuine and that its contents, including all statements, claims, and representations in the [claim] are true, complete, accurate, and not misleading." MONT. CODE ANN. § 53-6-160(1). Moreover, Montana regulations impose a duty on providers to "exercise reasonable care to ensure that a claim made or submitted to the department or its agents or employees for payment or reimbursement under the Medicaid program is one for which the provider is entitled to receive payment and that the service or item is provided and billed according to all applicable Medicaid requirements . . . ." MONT. CODE ANN. § 53-6-160(2)(b).

**S.    Nevada**

73.    The Nevada Department of Health and Human Services (DHHS) administers Nevada's Medicaid program. Nevada regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. *See* Exhibit 38 (Nevada Medicaid State Plan, Section 4.19 – Payment for Services, Attachment 4.19-B); *see also* Exhibit 39 at 26 (Nevada Medicaid and Nevada Check Up Pharmacy Manual, § 5.0 Provider Reimbursement).

74.    A provider is required to include its usual and customary charge on all Medicaid claims and is prohibited from charging Medicaid more than the general public. *See* Exhibit 40 at 5, 7 (Nevada Medicaid and Nevada Check Up Pharmacy Manual, Appendix A: Manual Claim Form Instructions); *see also* Exhibit 41 at 12 (Appendix B: NCPDP Payer Sheet for Pharmacy Providers); *see also* Exhibit 43 (Nevada Medicaid Services Manual, Addendum § U).

75.    A provider must sign a contract with DHHS's Division of Health Care Financing and Policy in order to receive reimbursement and must agree to "comply with protocols set forth in the Nevada Medicaid Services Manual, the Nevada Check Up Manual and Medicaid Operations Manual, including but not limited to . . . submitting accurate, complete and timely claims." *See* Exhibit 42, § 1.6, 1-2 (Nevada Medicaid Provider Contract). Per the agreement, a provider is also "responsible for the validity and accuracy of claims whether submitted on paper, electronically or through a billing service." *Id.* at § 2.2, 2. Furthermore, per Nevada's Medicaid Services Manual, a provider signing the enrollment agreement attests that the information contained in every claim submitted for reimbursement is "true, accurate and complete." Exhibit 42, § 102.5A.

**T.    New Hampshire**

76.    The New Hampshire Department of Health and Human Services administers New Hampshire's Medicaid program. New Hampshire regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge to the general public. N.H. CODE ADMIN. R.

ANN. He-W 570.14; *see also* Exhibit 45 at 54 (Pharmacy Provider Manual for New Hampshire Medicaid, § 6.0 Provider Reimbursement).

77.    "[T]he term 'usual and customary' means the lowest charge, fee, or rate charged by a provider for any product or service at the time such product or service was provided. . . . If the provider offers discounts or rebates, then the amount after applying discounts or rebates shall be utilized." N.H. REV. STAT. ANN. § 126-A:3(III).

78.    A pharmacy must include its usual and customary charge on all Medicaid claims, and providers are prohibited from billing or charging more than the provider's usual and customary charge. *See* Exhibit 46 at 58 (Pharmacy Provider Manual for New Hampshire Medicaid, Appendix A – Universal Claim Form); *see also* Exhibit 47 at 75 (Appendix B – Payer Specifications); *see also* N.H. REV. STAT. ANN. § 126-A:3(III)(a).

79.    New Hampshire's Medicaid provider enrollment application requires that providers agree to "[c]orrectly enter the claims data, monitor the data, and certify that the data entered is correct," as well as abide by "all Federal and State statutes, rules, regulations, and manuals governing the NH Title XIX Program." Exhibit 49 at § 6 Electronic Transaction Submissions, 8 (Enrollment Application: Group Provider). Providers must also agree that they "will not knowingly present or cause to be presented a false and/or fraudulent claim for payment by the NH Title XIX fiscal agent and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity." *Id.* at § 9 Application Signature, 13.

    **U.    New Jersey**

80.    The New Jersey Department of Human Services (DHS) administers New Jersey's Medicaid program. State regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. N.J. ADMIN. CODE § 10:51-1.5. New Jersey defines "usual and customary charge" as the "amount a provider charges the general public for a prescription for the

24

same drug product (same NDC number) in the same quantity as the prescription drug being dispensed to a Medicaid or NJ FamilyCare beneficiary. 'Usual and customary charge' means the actual charge made to the majority (51 percent) of the total patient population served by the individual pharmacy." N.J. ADMIN. CODE § 10:51-1.10. The regulation further states that New Jersey uses a provider's reported usual and customary charge as an element considered in the calculation of the basis of payment, and that the "provider shall not charge the [medical assistance] programs more than would be charged to a cash customer when the general public, including private and third party plans, accounts for more than 50 percent of a provider's total prescription volume." *Id.*

81.    By submitting a claim to DHS, a provider certifies that all information furnished on the claim is true, accurate, and complete and that "the services billed on any claim and the amount charged therefore, are in accordance with the requirements of the New Jersey Medicaid and/or NJ FamilyCare programs." N.J. ADMIN. CODE § 10:49-9.8.

## V.    New Mexico

82.    The New Mexico Human Services Department administers New Mexico's Medicaid program. New Mexico regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. *See* N.M. CODE R. § 8.324.4.16(A). A Medicaid provider's billed charge must be its usual and customary charge, which "refers to the amount that the individual provider charges the general public in the majority of cases for a specific procedure or service." N.M. CODE R. § 8.324.4.16(A)(5). The regulations further state, "Usual and customary charges must reflect discounts given to a MAP [medical assistance program] recipient for certain reasons, such as age or NF [nursing facility] resident, when a MAP eligible recipient meets the standards for the discount. MAD [Medical Assistance Division] must be given the advantage of

discounts received by the general public, including promotions or items sold at cost to the general public, if these are the prices usually and customarily charged to non-MAP recipient." *Id.*

### W.    New York

83.    The New York State Department of Health administers New York's Medicaid program. New York Medicaid reimbursement in excess of a pharmacy provider's usual and customary charge is prohibited by statute. *See* N.Y. SOC. SERV. LAW § 367-a(9)(b). The Pharmacy Manual for New York's Medicaid program defines "usual and customary charge" as the "price which a pharmacy charges to the general public." *See* Exhibit 50 at 44 (New York State Medicaid Program, Pharmacy Manual, Policy Guidelines).

84.    New York's Medicaid billing guidelines require pharmacy providers to include the amount charged and specifies that the amount charged "must not exceed the provider's usual and customary charge." Exhibit 51 at 18 (New York State eMedNY Billing Guidelines, Pharmacy).

85.    All providers submitting a claim for payment to New York Medicaid must certify that (*i*) all statements made on the claim form are true, accurate and complete, (*ii*) no material fact has been omitted from the form, and (*iii*) the provider understands that payment of claims comes from federal, state, and local funds and that the provider may be prosecuted under applicable federal and state laws for any false claims, statements or documents, or concealment of a material fact. Exhibit 52 at 7-8 (New York State Medicaid Program, Information for all Providers, General Billing, Claim Certification Statement). With the submission of each claim, providers must also certify understanding and agreement that they "shall be subject to and bound by all rules, regulations, policies, standards, fee codes and procedures of the [Department of Health] as set forth in Title 18 of the Official Compilation of Codes, Rules and Regulations of New York State and other publications of the Department, including Provider Manuals and other official bulletins of the Department." *Id.*

### X.    North Carolina

86.    The North Carolina Department of Health and Human Services, Division of Medical Assistance, administers North Carolina's Medicaid program. North Carolina regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. *See* Exhibit 53 at 25-26 (NC DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy, Attachment A: Claims Related Information).

87.    Providers are required to include their usual and customary charge on all Medicaid claims. *See* Exhibit 54 at 67-68 (NC DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy, Attachment H: Summary of Point-of-Sale Codes and Other Information for Current Claim Format); *see also* Exhibit 55 at 16 (NC Tracks NCMMIS NCPDP Pharmaceutical Drug Claims Version D.0 Companion Guide, § 4. Claim Billing / Claim Rebill). Providers are prohibited from submitting an amount in excess of the usual and customary charge in the "amount billed" section of the claim. *See* Exhibit 56 at 64 (NC DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy, Attachment F: Summary of Billing Requirements).

88.    In order to receive reimbursement from North Carolina's Medicaid program, providers must sign an agreement wherein they agree that "all claims shall be true, accurate, and complete" and submitted "in accordance with rules and billing instructions in effect at the time the service is rendered." Exhibit 57, §§ 5a, r (NC DHHS Provider Administrative Participation Agreement). Moreover, it is unlawful in North Carolina "for any provider of medical assistance to knowingly and willfully conceal or fail to disclose any fact or event affecting . . . [t]he amount of payment to which such person is or may be entitled." N.C. GEN. STAT. § 108A-63(b) (2010).

### Y.    Oklahoma

89.    The Oklahoma Health Care Authority (OHCA) administers Oklahoma's Medicaid program. Oklahoma regulations prohibit Medicaid reimbursement in excess of a provider's usual

and customary charge to the general public. OKLA. ADMIN. CODE § 317:30-5-78(d). Pharmacies are responsible for determining their usual and customary charge to the general public, and "general public" is defined as the "patient group accounting for the largest number of non-SoonerCare prescriptions from the individual pharmacy, but does not include patients who purchase or receive their prescriptions through other third-party payers." *Id.*

90.    A pharmacy must include its usual and customary charge to the general public on every claim submitted to Oklahoma Medicaid in order for Medicaid to pay the claim. *See* OKLA. ADMIN. CODE § 317:30-5-78(e). In order to receive payment, a pharmacy must also certify that all information contained in the claim, including the usual and customary charge, is true, accurate, and complete. *See* Exhibit 58 at 6-110 (Oklahoma Health Care Authority, Provider Billing and Procedure Manual, Chapter 6: Claim Completion, Section E: Drug/Compound Prescription Drug Pharmacy, NCPDD) (Prescription Drug Claim Form); *see also* OKLA. ADMIN. CODE § 317:30-3-2 ("In order to be eligible for payment, providers must have on file with OHCA, an approved Provider Agreement. Through this agreement, the provider certifies all information submitted on claims is accurate and complete, assures that the State Agency's requirements are met and assures compliance with all applicable Federal and State regulations.").

## Z.    Rhode Island

91.    The State of Rhode Island Department of Human Services administers Rhode Island's Medicaid program. Rhode Island regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge to the general public. *See* Exhibit 59 (Rhode Island Medicaid Provider Manual, Pharmacy, Pharmacy Coverage Policy, Pharmacy Billing Procedure). A provider's "Usual and Customary charge must include all group discounts (i.e., 10% Senior Citizen) when applicable to a Medicaid Recipient or any sale price that might apply at a particular point in time." *Id.*

92.     In order to enroll as a Rhode Island Medicaid provider, a pharmacy must agree to "bill the RI Medicaid Program in accordance with State and Federal regulations and laws, but in no event more than the provider's usual, customary, and reasonable rate charged to the general public for all services, goods, and products provided to Medicaid beneficiaries." Exhibit 60, § 11 (Rhode Island Medicaid Provider Agreement Form); *see also* § 12 ("The Provider shall be responsible for the accuracy of claims submitted, whether in paper or electronic form.").

## AA.   Tennessee

93.     The Tennessee Division of Health Care and Finance administers TennCare, Tennessee's Medicaid program. Tennessee regulations prohibit TennCare reimbursement in excess of a provider's usual and customary charge. *See* Exhibit 61, § 7.4, 30-31 (Tennessee Medicaid Pharmacy Claims Submission Manual); *see also* Exhibit 62 at 27 (Participating Pharmacy Agreement for Ambulatory and Long Term Care Providers). "Usual and Customary Charge" is defined as the "reasonable, usual and customary fees charged by the Pharmacy, which do not exceed the fees the Pharmacy would charge any other person regardless of whether the person is a TennCare enrollee, inclusive of any special marketing or prescription drug programs offered by the Pharmacy." *Id.* at 4.

94.     The TennCare pharmacy provider agreement contains a section regarding False Claims Act certifications, which states in part, "The Pharmacy . . . understands and agrees that each claim the Pharmacy . . . submits to TennCare or to a TennCare Managed Care Contractor and/or Organization constitutes a certification that the Pharmacy . . . has complied with all applicable Medicaid laws, regulations and program instructions . . . ." *Id.* at 24.

## BB.   Vermont

95.     The Vermont Agency of Human Services, Department of Vermont Health Access (DVHA), administers Vermont's Medicaid program. Vermont regulations prohibit Medicaid

reimbursement in excess of a provider's usual and customary charge to the general public, which is defined as the "provider's actual amount charged." 13-170 VT. CODE R. §§ 7501.3–7501.4. Providers must include their usual and customary charge to the general public on every claim submitted to Medicaid. *See* Exhibit 63 at 6 (Vermont Medicaid NCPDP Version D. Ø Payer Sheet).

96.    In order to receive reimbursement from Vermont's Medicaid program, a provider must sign an agreement with DVHA and agree to comply with "all applicable statutes, regulations, reimbursement manuals, policies, and properly promulgated rules of DVHA," as well as the False Claims Act, 31 U.S.C. §§ 3729-3733; 31 U.S.C. § 3801. Exhibit 64, §§ 4.1(d), 5.2(p) (Department of Vermont Health Access General Provider Agreement). Furthermore, providers must agree to submit all claims "in accordance with DVHA regulations" and are responsible for the accuracy and integrity of all claims submitted. *Id.* at § 4.4.

### CC.    Commonwealth of Virginia

97.    The Virginia Department of Medical Assistance Services (DMAS) administers the Commonwealth's Medicaid program. Virginia regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge, as identified by the charge on the claim submitted. *See* 12 VA. ADMIN. CODE § 30-80-40; *see also* Exhibit 65 at 19 (Pharmacy Manual, Chapter IV, Covered Services and Limitations). Virginia requires that providers bill Medicaid their usual and customary charges for all prescriptions dispensed. *See* Pharmacy Manual, Chapter V, Billing Procedures, 11.

98.    Every time a provider submits a claim to Virginia's Medicaid program, the provider must certify that all information contained in the claim, including the usual and customary charge, is true, accurate, and complete. *See* Exhibit 65.1 at 20 (Pharmacy Manual, Billing, Chapter V, Billing Procedures); *see also* Exhibit 66 (Virginia DMAS Pharmacy Claim Form, DMAS-173).

### DD.    Washington

99.    The Washington State Health Care Authority (HCA) administers Washington's Medicaid program. Washington regulations prohibit Medicaid reimbursement in excess of a provider's usual and customary charge. *See* WASH. ADMIN. CODE § 182-530-7000; *see also* WASH. ADMIN. CODE § 182-530-8150. Washington defines "usual and customary charge" as the "fee that the provider typically charges the general public for the product or service." WASH. ADMIN. CODE § 182-530-1050.

100.    Regarding discount programs, Washington's Prescription Drug Program Provider Guide, which binds all pharmacy providers participating in Washington's Medicaid program, states:

> If the pharmacy provider offers a discount, rebate, promotion or other incentive that directly relates to the reduction of the price of a prescription to the individual non-Medicaid customer, the provider must similarly reduce its charge to the agency for the prescription. (Example: A $5.00 off coupon for purchases elsewhere in the store.)

Exhibit 67 at 80 (Washington Apple Health, Prescription Drug Program Provider Guide).

101.    Pharmacy providers are required to adhere to HCA's electronic billing specifications, which require providers to bill the agency their usual and customary charge. *See* WASH. ADMIN. CODE § 182-530-5000; *see also* WASH. ADMIN. CODE § 182-502-0016(1)(b); *see also* Exhibit 67 at 84.

102.    Providers must sign the following certification on every Medicaid claim they submit:

> I hereby certify under penalty of perjury, that the material furnished and the service rendered is a correct charge against the State of Washington; the claim is just and due . . . and that the foregoing information is true, accurate and complete."

Exhibit 68 (Washington State Pharmacy Statement (525-106)).

## VI.    MEDICARE PART D

### A.    Overview of Medicare Part D

103.    Medicare Part D is a federal program administered by the Centers for Medicare and Medicaid Services (CMS) that provides prescription drug benefits for the elderly and disabled. 42 U.S.C. § 1395w-101 *et seq*. It was enacted as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 and went into effect on January 1, 2006. Some Medicare Part D beneficiaries are also dually eligible for Medicaid. Although Medicare Part D is a component of Medicare, each of the fifty states are required to make a contribution to the federal government to defray a portion of the cost of Medicare Part D for dually-eligible beneficiaries. 42 C.F.R. § 423.910. The federal government pays approximately 75% of the actual costs of an enrollee's prescription drug coverage. 42 U.S.C. § 1395w-115(a).

104.    A Medicare beneficiary enrolled in Medicare Part D chooses a Prescription Drug Plan (PDP), which is administered by a private insurance company, or "sponsor," based upon the beneficiary's specific drug requirements.  Part D sponsors are required to offer, at a minimum, a basic prescription drug benefit that is either the standard prescription drug benefit or is actuarially equivalent to the standard benefit. 42 C.F.R. § 423.104(a). The standard costs structure makes beneficiaries responsible for certain costs, which may include a monthly premium, an annual deductible, and coinsurance. 42 C.F.R. § 423.104(d), (e).

105.    For each PDP, the sponsor submits a bid to CMS based on actuarial data estimating the actual cost of providing prescription drugs to its pool of beneficiaries. 42 U.S.C. § 1395w-111(b); 42 C.F.R. § 423.265(c). The bid contains a per member per month (PMPM) cost estimate to provide Part D benefits to an average Medicare beneficiary in a particular geographic area. 42 C.F.R. § 423.265(c). CMS considers both the tiered formulary structure and utilization management program components of the Part D Plan Sponsor's bid. 42 C.F.R. § 423.272(a)(2).

From those Part D Plan bids, CMS calculates nationwide and regional benchmarks which represent an average PMPM cost. 42 C.F.R. § 423.279.

106.    The government makes per capita "interim payments" to the sponsor on a monthly basis. 42 U.S.C. § 1395w-115(d)(1); 42 C.F.R. § 423.329(a). Interim payments are intended to cover the government's 75% share and a higher share for beneficiaries who qualify for Part D's low-income subsidies or catastrophic coverage. 42 C.F.R. § 423.782; 42 C.F.R. § 423.104(d)(5).

107.    In order to receive interim payments, CMS requires sponsors to submit a Prescription Drug Event ("PDE") record for each prescription. CMS requires PDEs to contain certain data elements, including the actual costs associated with the prescription. Part D plan sponsors submit one PDE record each time a drug covered by Part D is dispensed to an enrollee, even for those events in which an enrollee is solely responsible for the cost (i.e., they are in the coverage gap or deductible phase). The PDE record documents the final adjudication of a dispensing event based upon claims received from pharmacies. *See* (CMS, UPDATED INSTRUCTIONS: REQUIREMENTS FOR SUBMITTING PRESCRIPTION DRUG EVENT DATA (PDE), 9 (2006)).

### B.    Required Part D Plan Sponsor Certifications

108.    Pursuant to 42 C.F.R. § 423.505(k), entitled "Certification of data that determine payments," Part D sponsors are required to make certifications to CMS regarding the submission of Part D data used for payment. First, sponsors must certify on all requests for payment that the data related to payment is accurate, complete, and truthful. *See* 42 C.F.R. § 423.505(k)(1) ("As a condition for receiving a monthly payment . . . The Part D Plan sponsor agrees that its chief executive officer (CEO), the chief financial officer (CFO), or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must request payment under the contract on a document that certifies (based on best knowledge, information,

and belief) the accuracy, completeness, and truthfulness of all data related to payment. The data may include specified enrollment information, claims data, bid submission data, and other data that CMS specifies.").

109.    Part D sponsors must also certify that all claims data submissions are accurate, complete, and truthful and must acknowledge that the data will be used for purposes of obtaining reimbursement. *See* 42 C.F.R. § 423.505(k)(3) ("The CEO, CFO, or an individual delegated the authority to sign on behalf of one of these officers, and who reports directly to the officer, must certify (based on best knowledge, information, and belief) that the claims data it submits under § 423.329(b)(3) (or for fallback entities, under § 423.871(f)) are accurate, complete, and truthful and acknowledge that the claims data will be used for the purpose of obtaining Federal reimbursement.").

110.    Furthermore, Part D sponsors must sign an Electronic Data Interchange (EDI) agreement with CMS in order to submit PDE data. The EDI agreement contains the following certification: "By signing below, the eligible organization certifies that each submission of PDE data pursuant to this Agreement will be accurate and complete to the eligible organization's best knowledge, information and belief." *See* Exhibit 69 (EDI Agreement).

## C.    Medicare Part D Usual and Customary Reporting Requirements

111.    In October 2006, CMS issued guidance making clear that the price a pharmacy offers through a discount program is that pharmacy's usual and customary price for Part D reimbursement purposes. The CMS memorandum states:

> For example, Wal-Mart recently introduced a program offering a reduced price for certain generics to its customers. The low Wal-Mart price on these specific generic drugs is considered Wal-Mart's "usual and customary" price, and is not considered a one-time "lower cash" price. Part D sponsors consider this lower amount to be "usual and customary" and will reimburse Wal-Mart on the basis of this price.

*See* Exhibit 70 (October 2006 CMS Memorandum).

## VII.    TRICARE, CHAMPVA AND FEHBP REIMBURSEMENT

112.    In addition to Medicaid and Medicare Part D, the federal government reimburses a portion of the cost of prescription drugs under several other federal and state health care programs, including TRICARE, the Civilian Health and Medical Program of the Veterans Administration (CHAMPVA), and the Federal Employees Health Benefits Plan (FEHBP).

113.    TRICARE (formerly known as CHAMPUS) is a federally-funded health care program that provides civilian health benefits for military personnel, military retirees, their spouses, and their dependents.  CHAMPVA is a federally-funded healthcare program for the families and survivors of veterans who have been rated permanently and totally disabled for a service-connected disability and for the survivors of a military member who died in the line of duty.  The FEHBP is administered by the Office of Personnel Management and provides health insurance for federal employees, retirees, and survivors.

114.    Pharmacies make express and/or implied certifications in their TRICARE provider enrollment forms that they will comply with all federal and state laws applicable to TRICARE. *See, e.g.,* 32 C.F.R. § 199.6(a)(13)(ii) (requiring CHAMPUS provider participation agreements to include provision obligating provider to "comply with the applicable provisions of this part and related CHAMPUS administrative policy").  Provider applications for FEHB programs contain similar requirements.

115.    Providers use CMS Form 1450 to submit claims to TRICARE. *See* TRICARE Operations Manual, Chapter 8, Section 1, §§ 3.1.1, 3.1.3. CMS Form 1450 contains the following language regarding certifications:

> Submission of this claim constitutes certification that the billing information as shown on the face hereof is true, accurate and complete. That

the submitter did not knowingly or recklessly disregard or misrepresent or conceal material facts.

*See* Exhibit 71 at 2 (CMS Form 1450).

## VIII.  RELATOR'S DISCOVERY OF DEFENDANTS' FRAUDULENT SCHEME

116.    Relator worked for Target as a pharmacist for several years before CVS acquired Target's pharmacies. Prior to the acquisition, Target had a Prescription Savings Program (PSP), in which customers could pay an enrollment fee and receive discounts on all drugs. *See* Exhibit 3 (FAQs regarding ScriptSave). Target customers could also fill certain generic medications for $4.00 to $10.00 without paying an enrollment fee. *Id.* Relator saw that Target submitted its discounted prices to Medicaid and Medicare for reimbursement; in other words, Target did not conceal its true usual and customary charges for prescriptions filled through its savings program.

117.    CVS discontinued Target's savings program shortly after acquiring Target's pharmacies in January 2016 and implemented the ScriptSave program to maintain the existing customer base and continue to lure in more customers in with cheaper prices on drugs. *See* Exhibit 2 at 22 (Pharmacy Operating Agreement between Target and CVS). When a cash-paying customer fills a prescription, CVS pharmacists enter a code into the computer system that automatically enrolls the customer into the ScriptSave program and applies a discount of up to 75% off of the prescription price at the time of checkout. *See* Exhibit 1 (Letter to customers); *see also* Exhibit 4 (Email to pharmacists with instructions on applying discount).

118.    Relator noticed that the deeply discounted prices given to customers through the ScriptSave program were much lower than the prices submitted to government health care programs for the same drugs. Specifically, Relator saw that CVS reported a drug's cash price as its usual and customary charge on claims submitted to federal and state health care programs and did not give these programs the same discounts offered through the ScriptSave program. This

36

raised Relator's suspicions, and he began to collect examples of the disparities between what CVS charged Medicaid and Medicare versus the discounted prices charged to patients using the ScriptSave program.

119.    Relator's concerns were exacerbated by the fact that management instructed him to contact patients who had gotten flu shots and urge them to switch to CVS for all prescription needs. CVS's targeted marketing paid off, as Relator saw patients covered by Medicaid, Medicare, and TriCare switch to CVS for their prescription needs, thus driving up the cost to government health programs.

120.    Relator reached out to a colleague working as a pharmacist at a stand-alone CVS store to inquire as to whether CVS pharmacies not previously owned by Target were also charging government health care programs more than they were charging customers using ScriptSave. Relator learned that CVS's fraudulent scheme was not limited to pharmacies previously owned by Target; stand-alone CVS stores were also not reporting ScriptSave discounts to federal and state health care programs.

## IX.    REPRESENTATIVE EXAMPLES OF PRICING DISPARITIES

### A.    Fraudulent Reporting of Usual and Customary Charge

121.    Unlike Target's Prescription Savings Program, CVS's ScriptSave program is not limited to a select list of generics; ***all*** prescription drugs are eligible for deep discounts. *See* Exhibit 1. Based on Relator's direct and independent knowledge, the following chart contains representative examples of large spreads between CVS's actual usual and customary charge and the usual and customary charge it submits to government health care programs:

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C Charge Per Unit[5]** | **CVS's Reported U&C Charge Per Unit[6]** | **Spread** | **Spread Percentage** | **Exhibit Nos.** |
| Clobetasol 0.05% Ointment 15 GM NDC: 50383-0268-15 | $1.08 | $8.86 | $7.78 | 720.37% | 77 |
| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.64 | 711.11% | 80 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $1.10 | 611.11% | 75 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.61 | 406.66% | 82 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.39 | 229.41% | 92 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.39 | 229.41% | 94 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.38 | 223.52% | 91 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.37 | 217.64% | 93 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $2.53 | 197.65% | 78 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.31 | 182.35% | 90 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.30 | 176.47% | 88 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.28 | 164.7% | 89 |
| Levothyroxine 50 MCG Tablet | $0.17 | $0.40 | $0.23 | 135.29% | 87 |

[5] The actual U&C charge per unit is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.

[6] The reported U&C charge per unit is calculated by dividing the total cash prescription price, which CVS reported as its usual and customary charge to Medicare and Medicaid programs, by the quantity dispensed.

| | | | | | |
|---|---|---|---|---|---|
| NDC: 00378-1803-10 | | | | | |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.41 | 132.25% | 81 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.21 | 123.52% | 86 |
| Duloxetine HCL DR 30 MG CAP NDC: 60505-2996-03 | $3.89 | $7.46 | $3.57 | 91.77% | 83 |
| Clobetasol 0.05% Cream NDC: 50383-0267-15 | $3.56 | $6.50 | $2.94 | 82.58% | 76 |
| Humalog 100 Units/ML Kwikpen NDC: 00002-8799-59 | $23.74 | $38.46 | $14.72 | 62% | 84 |
| Ventolin HFA 18 GM NDC: 00173-0682-20 | $2.39 | $3.83 | $1.44 | 60.25% | 100 |
| Advair 100-50 Diskus NDC: 00173-0695-00 | $3.73 | $5.66 | $1.93 | 51.74% | 72 |
| Novolog 100 Units/ML Flexpen NDC: 00169-6339-10 | $26.15 | $37.13 | $10.98 | 41.98% | 95 |
| Colcrys 0.6 MG Tablet NDC: 64764-0119-07 | $6.27 | $8.86 | $2.59 | 41.3% | 79 |
| Januvia 100 MG Tablet NDC: 00006-0277-31 | $11.46 | $14.94 | $3.48 | 30.36% | 85 |
| Spiriva 18 MCG CP-Handihaler NDC: 00597-0075-41 | $10.79 | $14.06 | $3.27 | 30.3% | 99 |
| Advair 500-50 Diskus NDC: 00173-0697-00 | $7.04 | $8.79 | $1.75 | 24.85% | 73 |
| Butalbital-Acetaminophen-Caffeine 50-325-40 MG NDC: 00603-2544-21 | $0.82 | $1.01 | $0.19 | 23.17% | 74 |
| Oxycontin 20 MG Tablet NDC: 59011-0420-10 | $6.53 | $6.81 | $0.28 | 4.28% | 97 |
| Oxycontin 10 MG Tablet NDC: 59011-0410-10 | $3.50 | $3.64 | $0.14 | 4% | 96 |
| Oxycontin 30 MG Tablet NDC: 59011-0430-10 | $9.07 | $9.38 | $0.31 | 3.41% | 98 |

**B.      Representative State Medicaid Spreads**

122.    Any drug, brand or generic, is eligible for a discount under the ScriptSave program; the following charts contain representative examples only. Medicaid programs should reimburse CVS in an amount no greater than the actual U&C charge (column B, showing the discounted ScriptSave price), which incorporates discounts offered under the ScriptSave program; however, because CVS fraudulently inflates its U&C charge by submitting the full price of the drug on Medicaid claims (column C, showing the price CVS reports as its U&C charge), it causes Medicaid programs to reimburse CVS in excess of the actual U&C charge and often at the maximum level of reimbursement (column D, showing the MAC). Columns E and F show the difference between what Medicaid programs should have paid versus the higher amounts CVS caused them to pay.

**1.      Representative Florida Medicaid Spreads**

123.    The chart below contains representative examples of the spreads between Florida Medicaid's MAC, or WAC if there is no MAC, and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[7]** | **CVS's Reported U&C per unit[8]** | **FL Medicaid MAC or WAC per unit** | **Spread[9]** | **Spread Percentage** | **Ex. Nos.** |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.68 (MAC) | $0.53 | 353.33% | 82 101 |
| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.38 (MAC) | $0.29 | 322.22% | 80 101 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.67 (MAC) | $0.50 | 294.11% | 94 101 |

[7] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.

[8] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.

[9] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC or WAC per unit (D).

| | | | | | |
|---|---|---|---|---|---|
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $4.24 (MAC) | $3.16 | 292.59% | 77 101 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.65 (MAC) | $0.48 | 282.35% | 93 101 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.55 (MAC) | $0.38 | 223.52% | 92 101 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.54 (MAC) | $0.37 | 217.64% | 91 101 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.49 (MAC) | $0.32 | 188.23% | 90 101 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.48 (MAC) | $0.31 | 182.35% | 89 101 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $0.48 (MAC) | $0.30 | 166.66% | 75 101 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.44 (MAC) | $0.27 | 158.82% | 88 101 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $3.12 (MAC) | $1.84 | 143.75% | 78 101 |
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.41 (MAC) | $0.24 | 141.17% | 87 101 |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.71 (MAC) | $0.40 | 129.03% | 81 101 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.36 (MAC) | $0.19 | 111.76% | 86 101 |
| Humalog 100 Units/ML Kwikpen NDC: 00002-8799-59 | $23.74 | $38.46 | $30.51 (WAC) | $6.77 | 28.51% | 84 101.1 |
| Advair 100-50 Diskus NDC: 00173-0695-00 | $3.73 | $5.66 | $4.48 (WAC) | $0.75 | 20.1% | 72 101.1 |
| Novolog 100 Units/ML Flexpen NDC: 00169-6339-10 | $26.15 | $37.13 | $30.47 (WAC) | $4.32 | 16.52% | 95 101.1 |
| Januvia 100 MG Tablet | $11.46 | $14.94 | $12.11 (WAC) | $0.65 | 5.67% | 85 101.1 |

| | | | | | | |
|---|---|---|---|---|---|---|
| NDC: 00006-0277-31 | | | | | | |
| Advair 500-50 Diskus NDC: 00173-0697-00 | $7.04 | $8.79 | $7.33 (WAC) | $0.29 | 4.11% | 73 101.1 |
| Butalbital-Acetaminophen-Caffeine 50-325-40 MG NDC: 00603-2544-21 | $0.82 | $1.01 | $0.84 (MAC) | $0.02 | 2.43% | 74 101 |

### 2.    Representative Georgia Medicaid Spreads

124.    The chart below contains representative examples of the spreads between the

Georgia Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[10]** | **CVS's Reported U&C per unit[11]** | **GA Medicaid MAC per unit** | **Spread[12]** | **Spread Percentage** | **Ex. Nos.** |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.71 | $0.54 | 317.64% | 93 102 |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $4.29 | $3.21 | 297.22% | 77 102 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.65 | $0.48 | 282.35% | 94 102 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.60 | $0.43 | 252.94% | 92 102 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.51 | $0.36 | 240% | 82 102 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.57 | $0.40 | 235.29% | 90 102 |
| Levothyroxine 137 MCG Tablet | $0.17 | $0.55 | $0.57 | $0.40 | 235.29% | 91 102 |

[10] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.
[11] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.
[12] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

| | | | | | |
|---|---|---|---|---|---|
| NDC: 00378-1823-01 | | | | | |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.45 | $0.28 | 164.7% | 88 102 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.45 | $0.28 | 164.7% | 89 102 |
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.41 | $0.24 | 141.17% | 87 102 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $0.43 | $0.25 | 138.88% | 75 102 |
| Butalbital-Acetaminophen-Caffeine 50-325-40 MG NDC: 00603-2544-21 | $0.82 | $1.01 | $1.69 | $0.87 | 106.09% | 74 102 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.35 | $0.18 | 105.88% | 86 102 |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.63 | $0.32 | 103.22% | 81 102 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $2.40 | $1.12 | 87.5% | 78 102 |
| Clobetasol 0.05% Cream NDC: 50383-0267-15 | $3.56 | $6.50 | $4.77 | $1.21 | 33.98% | 76 102 |

### 3.    Representative Illinois Medicaid Spreads

125.    The chart below contains representative examples of the spreads between the

Illinois Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[13]** | **CVS's Reported U&C per unit[14]** | **IL Medicaid MAC per unit** | **Spread[15]** | **Spread Percentage** | **Ex. Nos.** |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $5.37 | $4.29 | 397.22% | 77 103 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.67 | $0.50 | 294.11% | 93 103 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.67 | $0.50 | 294.11% | 94 103 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.52 | $0.35 | 205.88% | 92 103 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.49 | $0.32 | 188.23% | 90 103 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.43 (FUL) | $0.28 | 186.66% | 82 103 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.46 | $0.29 | 170.58% | 91 103 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.41 | $0.24 | 141.17% | 89 103 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $3.08 | $1.80 | 140.62% | 78 103 |
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.39 | $0.22 | 129.41% | 87 103 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.36 | $0.19 | 111.76% | 88 103 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.35 | $0.18 | 105.88% | 86 103 |

[13] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.

[14] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.

[15] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.15 (FUL) | $0.06 | 66.66% | 80 103 |
|---|---|---|---|---|---|---|
| Clobetasol 0.05% Cream NDC: 50383-0267-15 | $3.56 | $6.50 | $5.21 | $1.65 | 46.34% | 76 103 |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.40 | $0.09 | 29.03% | 81 103 |

### 4.    Representative Michigan Medicaid Spreads

126.    The chart below contains representative examples of the spreads between the

Michigan Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[16]** | **CVS's Reported U&C per unit[17]** | **MI Medicaid MAC per unit** | **Spread[18]** | **Spread Percentage** | **Ex. Nos.** |
| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.37 | $0.28 | 311.11% | 80 104 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.67 | $0.50 | 294.11% | 94 104 |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $4.23 | $3.15 | 291.66% | 77 104 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.66 | $0.49 | 288.23% | 93 104 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.55 | $0.40 | 266.66% | 82 104 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.55 | $0.38 | 223.52% | 92 104 |

---

[16] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.

[17] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.

[18] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

| | | | | | |
|---|---|---|---|---|---|
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.67 | $0.36 | 216.12% | 81 104 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.53 | $0.36 | 211.76% | 91 104 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.49 | $0.32 | 188.23% | 90 104 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.46 | $0.29 | 170.58% | 89 104 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $0.48 | $0.30 | 166.66% | 75 104 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.43 | $0.26 | 152.94% | 88 104 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $3.11 | $1.83 | 142.96% | 78 104 |
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.41 | $0.24 | 141.17% | 87 104 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.36 | $0.19 | 111.76% | 86 104 |

### 5.    Representative Nevada Medicaid Spreads

127.    The chart below contains representative examples of the spreads between the

Nevada Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[19]** | **CVS's Reported U&C per unit[20]** | **NV Medicaid MAC per unit** | **Spread[21]** | **Spread Percentage** | **Ex. Nos.** |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.56 | $0.41 | 273.33% | 82 105 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.50 | $0.33 | 194.11% | 93 105 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.50 | $0.33 | 194.11% | 94 105 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.45 | $0.28 | 164.7% | 90 105 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.42 | $0.25 | 147.05% | 91 105 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.39 | $0.22 | 129.41% | 92 105 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.35 | $0.18 | 105.88% | 88 105 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.35 | $0.18 | 105.88% | 89 105 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.27 | $0.10 | 58.82% | 86 105 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $0.23 | $0.05 | 27.77% | 75 105 |

[19] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.

[20] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.

[21] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

### 6.    Representative New Mexico Medicaid Spreads

128.    The chart below contains representative examples of the spreads between the New

Mexico Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[22]** | **CVS's Reported U&C per unit[23]** | **NM Medicaid MAC per unit** | **Spread[24]** | **Spread Percentage** | **Ex. Nos.** |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $10.38 | $9.30 | 861.11% | 77 106 |
| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.56 | $0.47 | 522.22% | 80 106 |
| Clobetasol 0.05% Solution 50 ML NDC:50383-0266-50 | $1.28 | $3.81 | $3.96 | $2.68 | 209.37% | 78 106 |
| Clobetasol 0.05% Cream NDC: 50383-0267-15 | $3.56 | $6.50 | $9.17 | $5.61 | 157.58% | 76 106 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.22 | $0.07 | 46.66% | 82 106 |
| Butalbital-Acetaminophen-Caffeine 50-325-40 MG NDC: 00603-2544-21 | $0.82 | $1.01 | $0.99 | $0.17 | 20.73% | 74 106 |
| Ciprofloxacin HCL 500 MG Tab NDC: 55111-0127-01 | $0.18 | $1.28 | $0.20 | $0.02 | 11.11% | 75 106 |

---

[22] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.
[23] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.
[24] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

### 7.    Representative New York Medicaid Spreads

129.    The chart below contains representative examples of the spreads between New York's Medicaid Reimbursable Amounts (MRA) and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Drug Name and NDC | Actual U&C per unit[25] | CVS's Reported U&C per unit[26] | NY MRA per unit | Spread[27] | Spread Percentage | Ex Nos. |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $4.23 | $3.15 | 291.66% | 77 107 |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.60 | $0.43 | 252.94% | 93 107 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.60 | $0.43 | 252.94% | 94 107 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.47 | $0.32 | 213.33% | 82 107 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.50 | $0.33 | 194.11% | 91 107 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.50 | $0.33 | 194.11% | 92 107 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.48 | $0.31 | 182.35% | 90 107 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.42 | $0.25 | 147.05% | 89 107 |
| Clobetasol 0.05% Solution 50 ML NDC: 50383-0266-50 | $1.28 | $3.81 | $3.09 | $1.81 | 141.4% | 78 107 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.41 | $0.24 | 141.17% | 88 107 |

[25] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.
[26] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.
[27] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

| | | | | | |
|---|---|---|---|---|---|
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.37 | $0.20 | 117.64% | 87 107 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.32 | $0.15 | 88.23% | 86 107 |
| Diclofenac Sod EC 75 MG Tablet NDC: 16571-0201-06 | $0.09 | $0.73 | $0.16 | $0.07 | 77.77% | 80 107 |
| Humalog 100 Units/ML Kwikpen NDC: 00002-8799-59 | $23.74 | $38.46 | $32.66 | $8.92 | 37.57% | 84 107 |
| Novolog 100 Units/ML Flexpen NDC: 00169-6339-10 | $26.15 | $37.13 | $32.75 | $6.60 | 25.23% | 95 107 |
| Advair 100-50 Diskus NDC: 00173-0695-00 | $3.73 | $5.66 | $4.47 | $0.74 | 19.83% | 72 107 |
| Ventolin HFA 18 GM NDC: 00173-0682-20 | $2.39 | $3.83 | $2.80 | $0.41 | 17.15% | 100 107 |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.36 | $0.05 | 16.12% | 81 107 |
| Januvia 100 MG Tablet NDC: 00006-0277-31 | $11.46 | $14.94 | $12.06 | $0.60 | 5.23% | 85 107 |
| Spiriva 18 MCG CP-Handihaler NDC: 00597-0075-41 | $10.79 | $14.06 | $11.31 | $0.52 | 4.81% | 99 107 |
| Colcrys 0.6 MG Tablet NDC: 64764-0119-07 | $6.27 | $8.86 | $6.55 | $0.28 | 4.46% | 79 107 |
| Advair 500-50 Diskus NDC: 00173-0697-00 | $7.04 | $8.79 | $7.30 | $0.26 | 3.69% | 73 107 |

**8.    Representative Tennessee Medicaid Spreads**

130.    The chart below contains representative examples of the spreads between the Tennessee Medicaid MAC and CVS's reported U&C charge:

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| **Drug Name and NDC** | **Actual U&C per unit[28]** | **CVS's Reported U&C per unit[29]** | **TN Medicaid MAC per unit** | **Spread[30]** | **Spread Percentage** | **Ex. Nos.** |
| Levothyroxine 175 MCG Tablet NDC: 00378-1817-10 | $0.17 | $0.54 | $0.76 | $0.59 | 347.05% | 93 108 |
| Levothyroxine 200 MCG Tablet NDC: 00378-1819-01 | $0.17 | $0.56 | $0.76 | $0.59 | 347.05% | 94 108 |
| Clobetasol 0.05% Ointment NDC: 50383-0268-15 | $1.08 | $8.86 | $4.68 | $3.60 | 333.33% | 77 108 |
| Levothyroxine 100 MCG Tablet NDC: 00378-1809-10 | $0.17 | $0.45 | $0.52 | $0.35 | 305.88% | 89 108 |
| Doxazosin Mesylate 8 MG Tablet NDC: 00378-4028-01 | $0.15 | $0.76 | $0.59 | $0.44 | 293.33% | 82 108 |
| Levothyroxine 150 MCG Tablet NDC: 00378-1815-10 | $0.17 | $0.56 | $0.65 | $0.48 | 282.35% | 92 108 |
| Levothyroxine 112 MCG Tablet NDC: 00378-1811-10 | $0.17 | $0.48 | $0.62 | $0.45 | 264.7% | 90 108 |
| Levothyroxine 137 MCG Tablet NDC: 00378-1823-01 | $0.17 | $0.55 | $0.50 | $0.33 | 194.11% | 91 108 |
| Levothyroxine 88 MCG Tablet NDC: 00378-1807-10 | $0.17 | $0.47 | $0.49 | $0.32 | 188.23% | 88 108 |
| Levothyroxine 50 MCG Tablet NDC: 00378-1803-10 | $0.17 | $0.40 | $0.48 | $0.31 | 182.35% | 87 108 |
| Levothyroxine 25 MCG Tablet NDC: 00378-1800-01 | $0.17 | $0.38 | $0.41 | $0.24 | 141.17% | 86 108 |
| Clobetasol 0.05% Solution 50 ML NDC: 50383-0266-50 | $1.28 | $3.81 | $3.07 | $1.79 | 139.84% | 78 108 |

[28] The actual U&C charge per unit (B) is calculated by dividing the total ScriptSave prescription price by the quantity dispensed.
[29] CVS's reported U&C charge per unit (C) is calculated by dividing the full prescription price, which CVS reports as its usual and customary charge to Medicaid programs, by the quantity dispensed.
[30] The spread (E) is calculated by subtracting the actual U&C per unit (B) from the MAC per unit (D).

| Butalbital-Acetaminophen-Caffeine 50-325-40 MG NDC: 00603-2544-21 | $0.82 | $1.01 | $1.12 | $0.30 | 36.58% | 74 108 |
| Doxazosin Mesylate 4 MG Tablet NDC: 00378-4024-01 | $0.31 | $0.72 | $0.36 | $0.05 | 16.12% | 81 108 |

### C.    Specific Patient Claims

131.    Relator was able to obtain several representative examples of prescriptions filled by Medicaid and Medicare beneficiaries, as set forth below.

132.    Patient One, a Virginia Medicaid beneficiary, filled a prescription for a Ventolin inhaler, 18 GM, on July 7, 2016. CVS submitted a claim for $60.79 to Virginia Medicaid instead of the discounted ScriptSave price, $43.03, which was CVS's usual and customary charge. *See* Exhibit 109 (Prescription register showing amount billed to Virginia Medicaid, receipt, and Virginia Medicaid coverage information for Patient One); *see also* Exhibit 100 (ScriptSave price for Ventolin). The spread between CVS's actual U&C charge and the charge submitted to Virginia Medicaid is $17.76, which equates to a **41.27%** difference. *Id.*

133.    Patient Two, a Medicare Part D beneficiary, filled a prescription for Clobetasol 0.05% Solution, 50 ML, on August 5, 2016. CVS submitted a claim for $206.31 to the Medicare Part D plan instead of the discounted ScriptSave price, $64.20, which was CVS's usual and customary charge. *See* Exhibit 110 (Prescription register showing amount billed to Medicare Part D, receipt, and Medicare Part D coverage information for Patient Two); *see also* Exhibit 78 (ScriptSave price for Clobetasol 0.05% Solution). The spread between CVS's actual U&C charge and the charge submitted to the Part D plan is $142.11, which equates to a **221.35%** difference. *Id.*

134.    Patient Three, a Medicare Part D beneficiary, filled a prescription for Levothyroxine 175 MCG Tablets on June 26, 2016. CVS submitted a claim for $72.52 to the Medicare Part D plan instead of the discounted ScriptSave price, $15.60, which was CVS's usual and customary charge. *See* Exhibit 111 (Prescription register showing amount billed to Medicare Part D, receipt, and Medicare Part D coverage information for Patient Three); *see also* Exhibit 93 (ScriptSave price for Levothyroxine 175 MCG Tablets). The spread between CVS's actual U&C charge and the charge submitted to the Part D plan is $56.92, which equates to a **364.87%** difference. *Id*.

135.    Patient Four, a Medicare Part D beneficiary, filled a prescription for Januvia 100 MG Tablets on July 16, 2016. CVS submitted a claim for $436.08 to the Medicare Part D plan instead of the discounted ScriptSave price, $344.10[31], which was CVS's usual and customary charge. *See* Exhibit 112 (Prescription register showing amount billed to Medicare Part D, receipt, and Medicare Part D coverage information for Patient Four); *see also* Exhibit 85 (ScriptSave price for Januvia 100 MG Tablets). The spread between CVS's actual U&C charge and the charge submitted to the Part D plan is $91.98, which equates to a **26.73%** difference. *Id*.

### X.    ACTIONABLE CONDUCT BY DEFENDANTS UNDER THE FALSE CLAIMS ACT

### A.    Applicable Law: The False Claims Act

136.    This is an action to recover damages and civil penalties on behalf of the United States and Relator Doe arising from the false and/or fraudulent statements, claims, and acts by Defendants made in violation of the False Claims Act, 31 U.S.C. §§ 3729–3732.

137.    The FCA provides that any person who

   (A)    knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval, or

---

[31] Exhibit 85 shows that $1,032.30 is the discounted ScriptSave price for 90 tablets of Januvia. In this example, the patient filled a prescription for 30 tablets, so the ScriptSave price is divided by three for this example.

(B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim

is liable to the Government for a civil penalty of not less than $10,781 and not more than $21,563

for each such claim, plus three times the amount of damages sustained by the Government because

of the false and/or fraudulent claim. *See* 31 U.S.C. § 3729(a)(1).

138.    The FCA defines "claim" as

(A)    mean[ing] any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

(i)    is presented to an officer, employee, or agent of the United States; or

(ii)    is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

(I)    provides or has provided any portion of the money or property requested or demanded; or

(II)    will reimburse such contractor, grantee, or other recipient for any portion of the        money or property which is requested or demanded . . . .

31 U.S.C. §3729(b)(2).

139.    The FCA allows any persons having knowledge of a false and/or fraudulent claim

against the United States to bring an action in federal district court for themselves and on behalf

of the United States and to share in any recovery as authorized by 31 U.S.C. § 3730.

140.    Based on these provisions, Relator Doe, on his behalf and on behalf of the United

States, seeks through this action to recover damages and civil penalties arising from Defendants'

submission of false and/or fraudulent claims to the federal government.  In this case, Defendants

knowingly submitted claims to government health care programs that sought reimbursement in

excess of Defendants' usual and customary charge to the general public. As a result of Defendants' conduct, the United States repeatedly paid claims in excess of Defendants' usual and customary charge and has suffered significant damages.

141.    There are no bars to recovery under 31 U.S.C. § 3730(e), and, or in the alternative, Relator is an original source as defined therein. Relator has direct and independent knowledge of the information on which the allegations are based.    To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and has provided this information to the Government prior to filing a complaint by serving a voluntary pre-filing disclosure statement on November 22, 2016 describing all material evidence and information related to his allegations.

**B.    Defendants' Violations of the FCA**

      **1.    Presentation of False Claims (31 U.S.C. § 3729(a)(1)(A))**

142.    The Defendants knowingly presented false and/or fraudulent claims for reimbursement (i.e., for payment or approval) to the United States by submitting claims to government health care programs that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Defendants gave discounts to the general public via the ScriptSave program and excluded those discounts from the usual and customary charges submitted to Medicaid and Medicare, thus inflating the claimed usual and customary charge. Furthermore, when submitting claims for payment, Defendants falsely certified that all claims contained true, accurate, and complete information when they in fact submitted inflated usual and customary charges. By creating and carrying out this fraudulent scheme, the Defendants knowingly and repeatedly violated the False Claims Act, 31 U.S.C. §3729(a)(1)(a).

143.    Given the structure of the health care systems at issue, Defendants' knowing submission of false and/or fraudulent claims had the potential to influence the government's payment decision. Federal and state regulations prohibit reimbursement in excess of a provider's usual and customary charge. Defendants' submission of false and/or fraudulent pharmaceutical claims to the government was a foreseeable factor in the government's loss, and as a result of Defendants' actions, the United States has suffered significant monetary damages.

### 2.    Making or Using False Records or Statements to Cause Claim to be Paid (31 U.S.C. § 3729(a)(1)(B))

144.    The Defendants knowingly made, used or caused to be made or used, false records or statements that caused the United States to pay false and/or fraudulent claims. The Defendants made, used, or caused to be made or used, false representations regarding the usual and customary charge to the general public when they reported false and/or fraudulent prices to government health care programs, knowing that these programs relied on the reported usual and customary charge to the general public when determining the reimbursement amount and with the intent of receiving reimbursement in excess of the usual and customary charge.

145.    These false statements or records also consist of false certifications or representations made or caused to be made by the Defendants to state Medicaid programs when submitting claims to these programs. As discussed *infra*, Defendants are required to certify that all information contained in claims is true and accurate and that the price submitted is the usual and customary charge to the general public.

146.    These false statements or records further consist of false certifications or representations made or caused to be made by the Defendants to state Medicaid programs when seeking to enroll as providers and receive reimbursement. As discussed *infra*, retail pharmacies, such as CVS, make certifications in their state Medicaid provider enrollment agreements and

ancillary agreements (e.g., electronic billing agreements) that all information submitted to Medicaid will be truthful, accurate, and complete and that they will comply with all federal and state laws and regulations applicable to Medicaid. By creating and carrying out their fraudulent scheme, the Defendants knowingly and repeatedly violated the False Claims Act, 31 U.S.C. §3729(a)(1)(b).

147. Given the structure of the health care systems at issue, and given the Defendants' false and/or fraudulent statements and representations, as well as the false and/or fraudulent records that the Defendants made, used, or caused to be made or used, Defendants' conduct had the potential to influence the government's payment decision. Federal and state regulations prohibit reimbursement in excess of a provider's usual and customary charge. Defendants' actions were a foreseeable factor in the government's loss, and as a result of Defendants' conduct, the United States has suffered significant monetary damages.

## XI. CAUSES OF ACTION

### A. Count I – False Claims (31 U.S.C. § 3729(a)(1)(A))

148. Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

149. By submitting claims to government health care programs that sought reimbursement in excess of Defendants' usual and customary charge to the general public and falsely certifying that these claims contained information that was true, accurate, and complete, the Defendants knowingly submitted false and/or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(A).

150. Given the structure of the health care systems at issue, Defendants' knowing submission of false and/or fraudulent claims had the potential to influence the government's payment decision. Federal and state regulations prohibit reimbursement in excess of a provider's

usual and customary charge. Defendants' submission of false and/or fraudulent pharmaceutical claims to the government was a foreseeable factor in the government's loss, and as a result of Defendants' actions, the United States has suffered significant monetary damages.

151.    The United States paid the false and/or fraudulent claims.

152.    By virtue of the false and/or fraudulent claims that Defendants knowingly presented or caused to be presented, the United States has suffered substantial monetary damages.

153.    There are no bars to recovery under 31 U.S.C. § 3730(e), or in the alternative, Relator is an original source as defined therein. Relator has direct and independent knowledge of the information on which the allegations are based.  To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and has provided this information to the Government prior to filing a complaint by serving a voluntary pre-filing disclosure statement on November 22, 2016 describing all material evidence and information related to his allegations.

**B.    Count II – False Records or Statements (31 U.S.C. § 3729(a)(1)(B))**

154.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

155.    The Defendants made, used, or caused to be made or used, false representations regarding the usual and customary charge to the general public when they reported false and/or fraudulent prices to government health care programs, knowing that representations regarding the usual and customary charge were material to these programs' determinations regarding reimbursement and with the intent of receiving reimbursement in excess of the usual and customary charge.

156.    These false statements or records also consist of false certifications or representations made or caused to be made by the Defendants to Medicaid programs when submitting claims to these programs. As discussed *infra*, Defendants are required to certify that all information contained in claims is true and accurate and that the price submitted is the usual and customary charge to the general public.

157.    These false statements or records further consist of false certifications or representations made or caused to be made by the Defendants to state Medicaid programs when seeking to participate in the various programs. As discussed *infra*, retail pharmacies, such as CVS, make certifications in their state Medicaid provider enrollment agreements and ancillary agreements (e.g., electronic billing agreements) that all information submitted to Medicaid will be truthful, accurate, and complete and that they will comply with all federal and state laws and regulations applicable to Medicaid.

158.    Given the structure of the health care systems at issue, and given the Defendants' false and/or fraudulent statements and representations, as well as the false and/or fraudulent records that the Defendants made, used, or caused to be made or used, Defendants' conduct had the potential to influence the government's payment decision.  Defendants' actions were a foreseeable factor in the government's loss, and as a result of Defendants' conduct, the United States has suffered significant monetary damages.

159.    There are no bars to recovery under 31 U.S.C. § 3730(e), and, or in the alternative, Relator is an original source as defined therein. Relator has direct and independent knowledge of the information on which the allegations are based.  To the extent that any allegations or transactions herein have been publicly disclosed, Relator has knowledge that is independent of and materially adds to any publicly disclosed allegations or transactions and has provided this

information to the Government prior to filing a complaint by serving a voluntary pre-filing disclosure statement on November 22, 2016 describing all material evidence and information related to this Complaint.

## RELIEF

160.    On behalf of the United States, Relator seeks to receive monetary damages equal to three times that suffered by the United States.  In addition, on behalf of the United States, Relator seeks to receive civil penalties against Defendants equal to $21,563 for each violation of 31 U.S.C. § 3729.

161.    Relator seeks an award totaling the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) of the False Claims Act.

162.    Relator seeks an award for all costs and expenses for this action, including attorneys' fees and court costs.

## PRAYER

163.    WHEREFORE, Relator prays for judgment in his favor and against Defendants for the following:

- Damages in the amount of three (3) times the actual damages suffered by the United States Government as a result of Defendants' conduct;

- Civil penalties against Defendants equal to $21,563 for each violation of 31 U.S.C. § 3729;

- The maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

- All costs and expenses of this litigation, including attorneys' fees and costs of court;

- Relator's individual damages; and

> ▪ All other relief on Relator's behalf or on behalf of the United States Government to which they may be entitled and that the Court deems just and proper.

**C.    Count III – California False Claims Act**

164.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

165.    This is a *qui tam* action brought by Relator and the State of California to recover treble damages and civil penalties under the California False Claims Act, CAL. GOV'T. CODE § 12650 *et seq*.

166.    CAL. GOV'T CODE § 12651(a) provides liability for any person who

> (1)    Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval.

> (2)    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false and/or fraudulent claim.

167.    Defendants have violated CAL. GOV'T CODE § 12651(a) by knowingly submitting false and/or fraudulent claims to Medi-Cal that sought reimbursement in excess of Defendants' usual and customary charge to the general public, also contrary to a California regulation requiring all providers to "submit their usual and customary charge when billing the Medi-Cal program for prescribed drugs" and regulations requiring pharmacies to offer the same discounts to Medi-Cal customers as those offered to the general public. *See* CAL. WELF. & INST. CODE § 14105.455(a); *see also* Exhibit 7 at 9. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

168.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Medi-Cal. Defendants' representations regarding usual and customary charges to the public are material to Medi-Cal's payment of claims. Medi-Cal prohibits

reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Medi-Cal to pay false and/or fraudulent claims as described herein.

169.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of California's payment decision.

170.    As a result of the Defendants' violations of CAL. GOV'T CODE §12651(a), the State of California has been damaged.

171.    There are no bars to recovery under CAL. GOV'T CODE §12652(d)(3), or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of California pursuant to CAL. GOV'T CODE § 12652(c).  Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

172.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages to the State of California.

173.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF CALIFORNIA:

(1)    Three times the amount of actual damages that the State of California has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that Defendants presented or caused to be presented to the State of California;

(3)    Prejudgment interest; and

  (4)  All costs incurred in bringing this action.

To RELATOR:

  (1)  The maximum amount allowed pursuant to CAL. GOV'T CODE § 12652 and/or any other applicable provision of law;

  (2)  Reimbursement for reasonable expenses that Relator incurred in connection with this action;

  (3)  An award of reasonable attorneys' fees and costs; and

  (4)  Such further relief as this Court deems equitable and just.

### D.  Count IV – Colorado Medicaid False Claims Act

174.  Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

175.  This is a *qui tam* action brought by Relator and the State of Colorado to recover treble damages and civil penalties under the Colorado Medicaid False Claims Act, COL. REV. STAT. § 25.5-4-304 *et seq.*

176.  COL. REV. STAT. §25.5-4-305(1) provides liability for any person who

  (a)  Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval;

  (b)  Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

177.  Defendants have violated COL. REV. STAT. §25.5-4-305(1) by knowingly submitting false and/or fraudulent claims to Colorado Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

178.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Colorado Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Colorado Medicaid's payment of claims. Colorado's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Colorado's Medicaid program to pay false and/or fraudulent claims as described herein.

179.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Colorado's payment decision.

180.    As a result of the Defendants' violations of COL. REV. STAT. §25.5-4-305(1), the State of Colorado has been damaged.

181.    There are no bars to recovery under COL. REV. STAT. §25.5-4-306, and, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Colorado pursuant to COL. REV. STAT. §25.5-4-306(2). Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

182.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages to the State of Colorado.

183.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF COLORADO:

64

    (1)    Three times the amount of actual damages that the State of Colorado has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Colorado;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to COL. REV. STAT. §25.5-4-306 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## E.    Count V – Connecticut False Claims Act

184.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

185.    This is a *qui tam* action brought by Relator and the State of Connecticut to recover treble damages and civil penalties under the Connecticut False Claims Act, CONN. GEN. STAT. § 4-274 *et seq*.

186.    CONN. GEN. STAT. § 4-275(a) provides that no person shall

    (1)    Knowingly present, or cause to be presented, a false and/or fraudulent claim for payment or approval under a state-administered health or human services program;

    (2)    Knowingly make, use or cause to be made or used, a false record or statement material to a false and/or fraudulent claim under a state-administered health or human services program.

187.    Defendants have violated CONN. GEN. STAT. § 4-275(a) by knowingly submitting false and/or fraudulent claims to Connecticut Medicaid that sought reimbursement in excess of

Defendants' usual and customary charge to the general public, also contrary to a Connecticut regulation requiring all providers to bill the Connecticut Department of Social Services "the lowest amount accepted from any member of the general public who participates in the pharmacy provider's savings or discount program." *See* CON. GEN. STAT. § 17b-226a. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

188.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Connecticut Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Connecticut Medicaid's payment of claims. Connecticut's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Connecticut's Medicaid program to pay false and/or fraudulent claims as described herein.

189.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Connecticut's payment decision.

190.    As a result of the Defendants' violations of CONN. GEN. STAT. § 4-275(a), the State of Connecticut has been damaged.

191.    There are no bars to recovery under CONN. GEN. STAT. § 4-282, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Connecticut pursuant to CONN. GEN. STAT. § 4-277. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

192.     This Court is requested to accept pendent jurisdiction over this related state claim

as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages

to the State of Connecticut.

193.     WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against the Defendants:

To the STATE OF CONNECTICUT:

    (1)    Three times the amount of actual damages that the State of Connecticut has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Connecticut;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to CONN. GEN. STAT. § 4-278(e) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**F.      Count VI - District of Columbia False Claims Act**

194.     Relator realleges and hereby incorporates by reference each and every allegation

contained in all paragraphs of this Complaint.

195.     This is a *qui tam* action brought by Relator and the District of Columbia to recover

treble damages and civil penalties under the District of Columbia False Claims Act, D.C. CODE §

2-381.01 *et seq.*

196.     D.C. CODE § 2-381.02(a) provides liability for any person who-

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the District a false claim for payment or approval; or

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the District.

197.    Defendants have violated D.C. CODE § 2-381.02(a) by knowingly submitting false and/or fraudulent claims to DC Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

198.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to DC Medicaid. Defendants' representations regarding usual and customary charges to the public are material to DC Medicaid's payment of claims. The DC Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused the DC Medicaid program to pay false and/or fraudulent claims as described herein.

199.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the District of Columbia's payment decision.

200.    As a result of Defendants' violations of D.C. CODE § 2-381.02(a), the District of Columbia has been damaged.

201.    There are no bars to recovery under D.C. CODE §2-381.03, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the District of Columbia pursuant to D.C. CODE §2-381.03. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the District before filing an action based on the information.

202.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the District of Columbia.

203.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the DISTRICT OF COLUMBIA:

(1)    Three times the amount of actual damages that the District of Columbia has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the District of Columbia;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to D.C. CODE § 2-381.03(f) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## G.    Count VII - Delaware False Claims and Reporting Act

204.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

205.    This is a *qui tam* action brought by Relator and the State of Delaware to recover treble damages and civil penalties under the Delaware False Claims and Reporting Act, DEL. CODE ANN. tit. 6, § 1201 *et seq.*

206. DEL. CODE ANN. tit. 6, § 1201(a) provides that no person shall

(1)    Knowingly present, or cause to be presented, a false and/or fraudulent claim for payment or approval under a state-administered health or human services program;

(2)    Knowingly make, use or cause to be made or used, a false record or statement material to a false and/or fraudulent claim under a state-administered health or human services program.

207. Defendants have violated DEL. CODE ANN. tit. 6, § 1201(a) by knowingly submitting false and/or fraudulent claims to Delaware Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Delaware's Medicaid program defines in part as the "amount charged to customer's enrolled in the provider's discount program." *See* Exhibit 9, § 4.1.4. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

208. Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Delaware Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Delaware Medicaid's payment of claims. Delaware's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Delaware's Medicaid program to pay false and/or fraudulent claims as described herein.

209. Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Delaware's payment decision.

210. As a result of the Defendants' violations of DEL. CODE ANN. tit. 6, § 1201(a), the State of Delaware has been damaged.

211.   There are no bars to recovery under DEL. CODE ANN. tit. 6, § 1206, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Delaware pursuant to DEL. CODE ANN. tit. 6 § 1203. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

212.   This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Delaware.

213.   WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF DELAWARE:

(1)   Three times the amount of actual damages that the State of Delaware has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)   A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Delaware;

(3)   Prejudgment interest; and

(4)   All costs incurred in bringing this action.

To RELATOR:

(1)   The maximum amount allowed pursuant to DEL. CODE ANN. tit. 6 § 1205, and/or any other applicable provision of law;

(2)   Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)   An award of reasonable attorneys' fees and costs; and

(4)   Such further relief as this Court deems equitable and just.

**H.    Count VIII – Florida False Claims Act**

214.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

215.    This is a *qui tam* action brought by Relator and the State of Florida to recover treble damages and civil penalties under the Florida False Claims Act, FLA. STAT. § 68.081 *et seq.*

216.    FLA. STAT. § 68.082(2) provides liability for any person who

    (a)    Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval;

    (b)    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false and/or fraudulent claim.

217.    Defendants have violated FLA. STAT. § 68.082(2) by knowingly submitting false and/or fraudulent claims to Florida Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

218.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Florida Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Florida Medicaid's payment of claims. Florida's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Florida's Medicaid program to pay false and/or fraudulent claims as described herein.

219.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Florida's payment decision.

220.    As a result of Defendants' violations of FLA. STAT. § 68.082(2), the State of Florida has been damaged.

221.    There are no bars to recovery under FLA. STAT. § 68.087(3), or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Florida pursuant to FLA. STAT. § 68.083. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Florida before filing an action based on the information.

222.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Florida.

223.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF FLORIDA:

    (1)    Three times the amount of actual damages that the State of Florida has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Florida;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to FLA. STAT. § 68.085 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## I.    Count IX – Georgia State False Medicaid Claims Act

224.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

225.    This is a *qui tam* action brought by Relator and the State of Georgia to recover treble damages and civil penalties under the Georgia State False Medicaid Claims Act, GA. CODE ANN. § 49-4-168 *et seq*.

226.    GA. CODE ANN. § 49-4-168.1(a) provides liability for any person who

(1)    Knowingly presents or causes to be presented to the Georgia Medicaid program a false and/or fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used a false record or statement material to a false and/or fraudulent claim.

227.    Defendants have violated GA. CODE ANN. § 49-4-168.1(a) by knowingly submitting false and/or fraudulent claims to Georgia Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Georgia's Medicaid program defines as the lowest price routinely offered to the general public, inclusive of prices offered as part of a discount program. *See* Exhibit 13, § 1001, X-2. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

228.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Georgia Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Georgia Medicaid's payment of claims. Georgia's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Georgia's Medicaid program to pay false and/or fraudulent claims as described herein.

229.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Georgia's payment decision.

230.    As a result of Defendants' violations of GA. CODE ANN. § 49-4-168.1, the State of Georgia has been damaged.

231.    There are no bars to recovery under GA. CODE ANN. § 49-4-168.2, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Georgia pursuant to GA. CODE ANN. § 49-4-168.2. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Georgia Attorney General's Office before filing an action based on the information.

232.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Georgia.

233.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF GEORGIA:

(1)    Three times the amount of actual damages that the State of Georgia has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Georgia;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to GA. CODE ANN. § 49-4-168.2 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

**J.    Count X – Hawaii False Claims Act**

234.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

235.    This is a *qui tam* action brought by Relator and the State of Hawaii to recover treble damages and civil penalties under the Hawaii False Claims Act, HAW. REV. STAT. § 661-21 *et seq*.

236.    HAW. REV. STAT. § 661-21(a) provides liability for any person who

(1)    Knowingly presents, or causes to be presented, a false or-fraudulent claim for payment or approval;

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

237.    Defendants have violated HAW. REV. STAT. § 661-21(a) by knowingly submitting false and/or fraudulent claims to Hawaii Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

238.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Hawaii Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Hawaii Medicaid's payment of claims. Hawaii's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug,

and Defendants caused Hawaii's Medicaid program to pay false and/or fraudulent claims as described herein.

239. Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Hawaii's payment decision.

240. As a result of the Defendants' violations of HAW. REV. STAT. § 661-21(a), the State of Hawaii has been damaged.

241. There are no bars to recovery under HAW. REV. STAT. § 661-31, or in the alternative, Relator is an original source as defined therein. Relator has brought this action on his own behalf and on behalf of the State of Hawaii pursuant to HAW. REV. STAT. § 661-25. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Hawaii before filing an action based on the information.

242. This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Hawaii.

243. WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF HAWAII:

(1) Three times the amount of actual damages that the State of Hawaii has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2) A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Hawaii;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Relator:

> (1)    The maximum amount allowed pursuant to Haw. Rev. Stat. § 661-27 and/or any other applicable provision of law;

> (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

> (3)    An award of reasonable attorneys' fees and costs; and

> (4)    Such further relief as this Court deems equitable and just.

## K.    Count XI – Illinois False Claims Act

244.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

245.    This is a *qui tam* action brought by Relator and the State of Illinois to recover treble damages and civil penalties under the Illinois False Claims Act, 740 Ill. Comp. Stat. 175/1 *et seq*.

246.    740 Ill. Comp. Stat. 175/3(a)(1) provides liability for any person who

> (A)    Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

> (B)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

247.    Defendants have violated 740 Ill. Comp. Stat. 175/3(a) by knowingly submitting false and/or fraudulent claims to Illinois Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

248.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Illinois Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Illinois Medicaid's payment of claims. Illinois's

Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Illinois's Medicaid program to pay false and/or fraudulent claims as described herein.

249.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Illinois's payment decision.

250.    As a result of the Defendants' violations of 740 ILL. COMP. STAT. 175/3(a), the State of Illinois has been damaged.

251.    There are no bars to recovery under 740 ILL. COMP. STAT. 175/4, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Illinois pursuant to 740 ILL. COMP. STAT. 175/4. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Illinois before filing an action based on the information.

252.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Illinois.

253.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF ILLINOIS:

(1)    Three times the amount of actual damages that the State of Illinois has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Illinois;

      (3)      Prejudgment interest; and

      (4)      All costs incurred in bringing this action.

To RELATOR:

      (1)      The maximum amount allowed pursuant to 740 ILL. COMP. STAT. 175/4(d) and/or any other applicable provision of law;

      (2)      Reimbursement for reasonable expenses that Relator incurred in connection with this action;

      (3)      An award of reasonable attorneys' fees and costs; and

      (4)      Such further relief as this Court deems equitable and just.

**L.     Count XII – Indiana Medicaid False Claims and Whistleblower Protection Act**

254.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

255.    This is a *qui tam* action brought by Relator and the State of Indiana to recover treble damages and civil penalties under the Indiana Medicaid False Claims and Whistleblower Protection Act, IND. CODE §5-11-5.7-1 *et seq.*

256.    IND. CODE §5-11-5.7-2(a) provides liability for any person who

      (1)      Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

      (2)      Knowingly makes, uses, or causes to be made or used, a false record or statement that is material to a false and/or fraudulent claim.

257.    Defendants have violated IND. CODE §5-11-5.7-2(a) by knowingly submitting false and/or fraudulent claims to Indiana Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Indiana's Medicaid program defines as inclusive of any special pricing or discounts offered to the public. *See* Exhibit 20 at 10-11.

Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

258.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Indiana Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Indiana Medicaid's payment of claims. Indiana's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Indiana's Medicaid program to pay false and/or fraudulent claims as described herein.

259.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Indiana's payment decision.

260.    As a result of Defendants' violations of IND. CODE § 5-11-5.7-2(a), the State of Indiana has been damaged.

261.    There are no bars to recovery under IND. CODE § 5-11-5.7-6.  Relator has brought this action on his own behalf and on behalf of the State of Indiana pursuant to IND. CODE § 5-11-5.7-4. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Indiana before filing an action based on the information.

262.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Indiana.

263.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF INDIANA:

    (1)    Three times the amount of actual damages that the State of Indiana has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Indiana;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to IND. CODE §5-11-5.7-6 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

### M.    Count XIII – Iowa False Claims Act

264.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

265.    This is a *qui tam* action brought by Relator and the State of Iowa to recover treble damages and civil penalties under the Iowa False Claims Act, IOWA CODE § 685.1 *et seq.*

266.    IOWA CODE § 685.2(1) provides liability for any person who

    (a)    Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval.

    (b)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

267.    Defendants have violated IOWA CODE § 685.2(1) by knowingly submitting false and/or fraudulent claims to Iowa Medicaid that sought reimbursement in excess of Defendants'

usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

268.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Iowa Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Iowa Medicaid's payment of claims. Iowa's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Iowa's Medicaid program to pay false and/or fraudulent claims as described herein.

269.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Iowa's payment decision.

270.    As a result of the Defendants' violations of IOWA CODE § 685.2(1), the State of Iowa has been damaged.

271.    There are no bars to recovery under IOWA CODE § 685.3 and, or in the alternative, Relator is an original source as defined under IOWA CODE § 685.1.  Relator has brought this action on his own behalf and on behalf of the State of Iowa pursuant to IOWA CODE § 685.3. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Iowa before filing an action based on the information.

272.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Iowa.

273.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF IOWA:

- Three times the amount of actual damages that the State of Iowa has sustained as a result of the fraudulent and illegal practices of the Defendants;

- A civil penalty of not less than $21,563 for each false claim that the Defendants presented or caused to be presented to the State of Iowa;

- Prejudgment interest; and

- All costs incurred in bringing this action.

To RELATOR:

- The maximum amount allowed pursuant to IOWA CODE § 685.3(4) and/or any other applicable provision of law;

- Reimbursement for reasonable expenses that Relator incurred in connection with this action;

- An award of reasonable attorneys' fees and costs; and

- Such further relief as this Court deems equitable and just.

**N.    Count XIV – Louisiana Medical Assistance Programs Integrity Law**

274.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

275.    This is a *qui tam* action brought by Relator and the State of Louisiana to recover treble damages and civil penalties under the Louisiana Medical Assistance Programs Integrity Law, LA. REV. STAT. ANN. § 46:437.1 *et seq.*

276.    LA. REV. STAT. ANN. § 46:438.3 provides

A.    No person shall knowingly present or cause to be presented a false and/or fraudulent claim.

> B.    No person shall knowingly engage in misrepresentation or make, use, or cause to be made or used, a false record or statement material to a false and/or fraudulent claim.

277.    Defendants have violated LA. REV. STAT. ANN. § 46:438.3 by knowingly submitting false and/or fraudulent claims to Louisiana Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

278.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Louisiana Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Louisiana Medicaid's payment of claims. Louisiana's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Louisiana's Medicaid program to pay false and/or fraudulent claims as described herein.

279.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Louisiana's payment decision.

280.    As a result of Defendants' violations of LA. REV. STAT. ANN. § 46:438.3, the State of Louisiana has been damaged.

281.    There are no bars to recovery under LA. REV. STAT. ANN. § 46:439.1(E), or in the alternative, Relator is an original source as defined therein. Relator has brought this action on his own behalf and on behalf of the State of Louisiana pursuant to LA. REV. STAT. ANN. § 46:439.1. Relator has direct and independent knowledge of the information on which these allegations are

based and has voluntarily provided the information to the State of Louisiana before filing an action based on the information.

282.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Louisiana.

283.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF LOUISIANA:

    (1)    Three times the amount of actual damages that the State of Louisiana has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Louisiana;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to LA. REV. STAT. § 46:439.4 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**O.    Count XV – Maryland False Health Claims Act**

284.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

285.    This is a *qui tam* action brought by Relator and the State of Maryland to recover treble damages and civil penalties under the Maryland False Claims Act, MD. CODE ANN. HEALTH-GEN. §2-601 *et seq.*

286.    MD. CODE ANN. HEALTH-GEN. §2-602(a) provides that a person may not

1.    Knowingly present or cause to be presented a false and/or fraudulent claim for payment or approval;

2.    Knowingly make, use, or cause to be made or used a false record or statement material to a false and/or fraudulent claim;

\*\*\*

9.    Knowingly make any other false and/or fraudulent claim against a State health plan or a State health program.

287.    Defendants have violated MD. CODE ANN. HEALTH-GEN. §2-602(a) by knowingly submitting false and/or fraudulent claims to Maryland Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

288.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Maryland Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Maryland Medicaid's payment of claims. Maryland's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Maryland's Medicaid program to pay false and/or fraudulent claims as described herein.

289.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Maryland's payment decision.

290.    As a result of the Defendants' violations of MD. CODE ANN. HEALTH-GEN. §2-602, the State of Maryland has been damaged.

291.    There are no bars to recovery under MD. CODE ANN. HEALTH-GEN. §2-606. In the alternative, Relator has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the State of Maryland prior to filing the action.  Relator has brought this action pursuant to MD. CODE ANN. HEALTH-GEN. §2-604(a) on behalf of himself and on behalf of the State of Maryland.

292.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages to the State of Maryland in the operation of its Medicaid program.

293.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF MARYLAND:

(1)    Three times the amount of actual damages that the State of Maryland has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $10,000 for each false claim that the Defendants presented or caused to be presented to the State of Maryland;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to MD. CODE ANN. HEALTH-GEN. §2-605 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)      Such further relief as this Court deems equitable and just.

**P.     Count XVI – Massachusetts False Claims Act**

294.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

295.    This is a *qui tam* action brought by Relator and the Commonwealth of Massachusetts for treble damages and penalties under the Massachusetts False Claims Act, MASS. GEN. LAWS ch. 12 § 5A *et seq.*

296.    MASS. GEN. LAWS ch. 12 § 5B provides liability for any person who-

(1)      Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

(2)      Knowingly makes, uses or causes to be made or used a false record or statement material to a false and/or fraudulent claim.

297.    Defendants have violated MASS. GEN. LAWS ch. 12 § 5B by knowingly submitting false and/or fraudulent claims to the Commonwealth's Medicaid program, MassHealth, that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

298.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to MassHealth. Defendants' representations regarding usual and customary charges to the public are material to the Commonwealth's payment of claims. The Commonwealth prohibits MassHealth reimbursement in excess of the usual and customary charge for a drug, and Defendants caused MassHealth to pay false and/or fraudulent claims as described herein.

299.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the Commonwealth's payment decision.

300.    As a result of the Defendants' violations of MASS. GEN. LAWS ch. 12 § 5B, the Commonwealth of Massachusetts has been damaged.

301.    There are no bars to recovery under MASS. GEN. LAWS ch. 12 § 5G, and, or in the alternative, Relator is an original source as defined in MASS. GEN. LAWS ch. 12 § 5A.  Relator has brought this action on his own behalf and on behalf of the Commonwealth of Massachusetts pursuant to MASS. GEN. LAWS ch. 12 § 5C(2). Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the Commonwealth of Massachusetts before filing an action based on the information.

302.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the Commonwealth of Massachusetts.

303.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the COMMONWEALTH OF MASSACHUSETTS:

(1)    Three times the amount of actual damages that the Commonwealth of Massachusetts has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the Commonwealth of Massachusetts;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator:

> (1)    The maximum amount allowed pursuant to Mass. Gen. Laws ch. 12, §5F and/or any other applicable provision of law;
>
> (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;
>
> (3)    An award of reasonable attorneys' fees and costs; and
>
> (4)    Such further relief as this Court deems equitable and just.

## Q.    Count XVII – Michigan Medicaid False Claim Act

304.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

305.    This is a *qui tam* action brought by Relator and the State of Michigan for treble damages and penalties under the Michigan Medicaid False Claim Act, Mich. Comp. Laws § 400.601 *et seq.*

306.    The Michigan Medicaid False Claim Act contains the following provisions:

- A person shall not knowingly make or cause to be made a false statement or false representation of a material fact for use in determining rights to a Medicaid benefit. Mich. Comp. Laws § 400.603(2).

- A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false. Mich. Comp. Laws § 400.607(1).

307.    Defendants have violated Mich. Comp. Laws §§ 400.603(2) and 400.607(1) by knowingly submitting false and/or fraudulent claims to Michigan Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Michigan's Medicaid program defines as inclusive of any special pricing or discounts offered to

the public. *See* Exhibit 34, § 12.2, 35. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

308.     Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Michigan Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Michigan Medicaid's payment of claims. Michigan's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Michigan's Medicaid program to pay false and/or fraudulent claims as described herein.

309.     Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Michigan's payment decision.

310.     As a result of the Defendants' violations of MICH. COMP. LAWS §§ 400.603(2) and 400.607(1), the State of Michigan has been damaged.

311.     There are no bars to recovery under MICH. COMP. LAWS § 400.610a, and, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Michigan pursuant to MICH. COMP. LAWS § 400.610a. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Michigan Attorney General's Office before filing an action based on the information.

312.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Michigan.

313.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF MICHIGAN:

    (1)    Three times the amount of actual damages that the State of Michigan has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $10,000 for each false claim that the Defendants presented or caused to be presented to the State of Michigan;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to MICH. COMP. LAWS §400.610a(9) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**R.    Count XVIII – Minnesota False Claims Act**

314.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

315.    This is a *qui tam* action brought by Relator and the State of Minnesota to recover treble damages and civil penalties under the Minnesota False Claims Act, MINN. STAT. § 15C.01 *et seq.*

316.    MINN. STAT. § 15C.02(a) imposes liability on any person who

    (1)    Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval;

(2)      Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

317.      Defendants have violated MINN. STAT. § 15C.02(a) by knowingly submitting false and/or fraudulent claims to Minnesota's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

318.      Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Minnesota Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Minnesota's payment of Medicaid claims. Minnesota's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused Minnesota's Medicaid program to pay false and/or fraudulent claims as described herein.

319.      Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence Minnesota Medicaid's payment decision.

320.      As a result of the Defendants' violations of MINN. STAT. § 15C.02, the State of Minnesota has been damaged.

321.      There are no bars to recovery under MINN. STAT. § 15C.05, or in the alternative, Relator is an original source as defined in MINN. STAT. §15C.01. Relator has brought this action on his own behalf and on behalf of the State of Minnesota pursuant to MINN. STAT. § 15C.05. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Minnesota before filing an action based on the information.

322.     This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages to the State of Minnesota.

323.     WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF MINNESOTA:

    (1)    Three times the amount of actual damages that the State of Minnesota has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Minnesota;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to MINN. STAT. § 15C.13 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**S.     Count XIX – Montana False Claims Act**

324.     Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

325.     This is a *qui tam* action brought by Relator and the State of Montana for treble damages and penalties under the Montana False Claims Act, MONT. CODE ANN. § 17-8-401 *et seq.*

326.     MONT. CODE ANN. § 17-8-403(1) provides liability for any person who

      (a)     Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

      (b)     Knowingly makes, uses, or causes to be made or used a false record or statement material to a false and/or fraudulent claim.

327.    Defendants have violated MONT. CODE ANN. § 17-8-403(1) by knowingly submitting false and/or fraudulent claims to Montana Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Montana's Medicaid program defines as inclusive of any discounts offered to the public. *See* Exhibit 36 at 6.1. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

328.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Montana Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Montana Medicaid's payment of claims. Montana's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Montana's Medicaid program to pay false and/or fraudulent claims as described herein.

329.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Montana's payment decision.

330.    As a result of the Defendants' violations of MONT. CODE ANN. § 17-8-403(1), the State of Montana has been damaged.

331.    There are no bars to recovery under MONT. CODE ANN. § 17-8-403(6), or in the alternative, Relator is an original source as defined therein. Relator has brought this action on his own behalf and on behalf of the State of Montana pursuant to MONT. CODE ANN. § 17-8-406.

Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State of Montana before filing an action based on the information.

332.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Montana.

333.    WHEREFORE, Relator respectfully requests that this Court award the following damages to the following parties and against the Defendants:

To the STATE OF MONTANA:

> (1)    Three times the amount of actual damages that the State of Montana has sustained as a result of the fraudulent and illegal practices of the Defendants;
>
> (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Montana;
>
> (3)    Prejudgment interest; and
>
> (4)    All costs incurred in bringing this action.

To RELATOR:

> (1)    The maximum amount allowed pursuant to MONT. CODE ANN. § 17-8-410 and/or any other applicable provision of law;
>
> (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;
>
> (3)    An award of reasonable attorneys' fees and costs; and
>
> (4)    Such further relief as this Court deems equitable and just.

**T.    Count XX – Nevada False Claims Act**

334.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

335.    This is a *qui tam* action brought by Relator and the State of Nevada to recover treble damages and civil penalties under the Nevada law governing the Submission of False Claims to State or Local Governments, NEV. REV. STAT. § 357.010, *et seq.*

336.    NEV. REV. STAT. § 357.040(1) provides liability, regardless of whether or not there is intent to defraud, for any person who

    (a)    Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval.

    (b)    Knowingly makes or uses, or causes to be made or used, a false record or statement that is material to a false and/or fraudulent claim.

337.    Defendants have violated NEV. REV. STAT. § 357.040(1) by knowingly submitting false and/or fraudulent claims to Nevada's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

338.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Nevada Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Nevada's payment of Medicaid claims. Nevada's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused Nevada's Medicaid program to pay false and/or fraudulent claims as described herein.

339.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence Nevada Medicaid's payment decision.

340.    As a result of the Defendants' violations of NEV. REV. STAT. § 357.040(1), the State of Nevada has been damaged.

341.     There are no bars to recovery under NEV. REV. STAT. § 357.100, and, or in the alternative, Relator is an original source as defined in NEV. REV. STAT. § 357.026.  Relator is a private person who has brought this action pursuant to NEV. REV. STAT. § 357.080(1) on behalf of himself and on behalf of the State of Nevada. Relator has voluntarily disclosed the information on which the allegations herein are based prior to commencing this action, and the information provided by Relator is based on his direct and independent knowledge of the fraud.

342.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Nevada in the operation of its Medicaid program.

343.     WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NEVADA:

(1)     Three times the amount of actual damages that the State of Nevada has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)     A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Nevada;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to NEV. REV. STAT. § 357.210 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

U.    **Count XXI – New Hampshire False Claims Act**

344.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

345.    This is a *qui tam* action brought by Relator and the State of New Hampshire to recover treble damages and civil penalties under the New Hampshire False Claims Act, N.H. REV. STAT. ANN. § 167:58 *et. seq*.

346.    N.H. REV. STAT. ANN. §167:61-b(I) provides liability for any person who

    (a)    Knowingly presents, or causes to be presented, to an officer or employee of the department, a false and/or fraudulent claim for payment or approval.

    (b)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false and/or fraudulent claim paid or approved by the department.

347.    Defendants have violated N.H. REV. STAT. ANN. §167:61-b(I) by knowingly submitting false and/or fraudulent claims to New Hampshire Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which a New Hampshire statute defines as "the amount after applying discounts or rebates" offered by the provider to the public. *See* N.H. REV. STAT. ANN. § 126-A:3(III). Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

348.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to New Hampshire Medicaid. Defendants' representations regarding usual and customary charges to the public are material to New Hampshire Medicaid's payment of claims. New Hampshire's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused New Hampshire's Medicaid program to pay false and/or fraudulent claims as described herein.

349.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of New Hampshire's payment decision.

350.    As a result of the Defendants' violations of N.H. REV. STAT. ANN. §167:61(I), the State of New Hampshire has been damaged.

351.    There are no bars to recovery under N.H. REV. STAT. ANN. § 167:61-e(III)(d), or in the alternative, Relator is an original source as defined in N.H. REV. STAT. ANN. § 167:61-bV(c). Relator is an individual with direct and independent knowledge of the information on which these allegations are based, and he has brought this action pursuant to N.H. REV. STAT. ANN. §167:61-c on behalf of himself and on behalf of the State of New Hampshire. Relator has voluntarily provided the information herein to the state before filing an action under N.H. REV. STAT. ANN. § 167:61-c that is based on that information.

352.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of New Hampshire.

353.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NEW HAMPSHIRE:

(1)    Three times the amount of actual damages that the State of New Hampshire has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $10,000 for each false claim that the Defendants presented or caused to be presented to the State of New Hampshire;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to N.H. REV. STAT. ANN. §167:61-e and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

**V.    Count XXII – New Jersey False Claims Act**

354.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

355.    This is a *qui tam* action brought by Relator and the State of New Jersey to recover treble damages and civil penalties under the New Jersey False Claims Act, N.J. STAT. ANN. § 2A:32C-1 *et seq*.

356.    N.J. STAT. ANN. § 2A:32C-3 provides liability for any person who

(a)    Knowingly presents or causes to be presented to an employee, officer or agent of the State, or to any contractor, grantee, or other recipient of State funds, a false and/or fraudulent claim for payment or approval;

(b)    Knowingly makes, uses, or causes to be made or used a false record or statement to get a false and/or fraudulent claim paid or approved by the State.

357.    Defendants have violated N.J. STAT. ANN. § 2A:32C-3 by knowingly submitting false and/or fraudulent claims to New Jersey's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

358.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to New Jersey Medicaid. Defendants' representations regarding usual and customary charges to the public are material to New Jersey's payment of Medicaid claims. New Jersey's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused New Jersey's Medicaid program to pay false and/or fraudulent claims as described herein.

359.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence New Jersey Medicaid's payment decision.

360.    As a result of the Defendants' violations of N.J. STAT. ANN. § 2A:32C-3, the State of New Jersey has been damaged.

361.    There are no bars to recovery under N.J. STAT. ANN. § 2A:32C-9(c), or in the alternative, Relator is an original source as defined therein.  Relator is an individual with direct and independent knowledge of the allegations herein. Furthermore, Relator has voluntarily provided the information underlying these allegations to the State prior to bringing this action on behalf of himself and on behalf of the State of New Jersey pursuant to N.J. STAT. ANN. § 2A:32C-5(b).

362.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of New Jersey.

363.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NEW JERSEY:

(1)    Three times the amount of actual damages that the State of New Jersey has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $21,563 for each false claim that the Defendants presented or caused to be presented to the State of New Jersey;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to N.J. STAT. ANN. § 2A:32C-7 and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## W.    Count XXIII – New Mexico Medicaid False Claims Act

364.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

365.    This is a *qui tam* action brought by Relator and the State of New Mexico to recover treble damages and civil penalties under the New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-1 *et seq*. and the New Mexico Fraud Against Taxpayers Act, N.M. STAT. ANN. § 44-9-1 *et seq*.

366.    N.M. STAT. ANN. § 27-14-4 provides liability for any person who

(A)    Presents, or causes to be presented, to the state a claim for payment under the Medicaid program knowing that such claim is false and/or fraudulent;

***

(C)    Makes, uses or causes to be made or used a record or statement to obtain a false and/or fraudulent claim under the Medicaid program

paid for or approved by the state knowing such record or statement is false.

367.    N.M. STAT. ANN. § 44-9-3(A) provides that a person shall not

(1)    Knowingly present, or cause to be presented, to an employee, officer or agent of the state or a political subdivision or to a contractor, grantee or other recipient of state or political subdivision funds a false and/or fraudulent claim for payment or approval;

(2)    Knowingly make or use, or cause to be made or used, a false, misleading or fraudulent record or statement to obtain or support the approval of or the payment on a false and/or fraudulent claim.

368.    N.M. STAT. ANN. § 44-9-3(B) provides that proof of specific intent to defraud is not required for a violation of § 44-9-3(A).

369.    Defendants have violated N.M. STAT. ANN. § 27-14-4 and N.M. STAT. ANN. § 44-9-3(A) by knowingly submitting false and/or fraudulent claims to New Mexico Medicaid that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which a New Mexico regulation defines as inclusive of discounts. *See* N.M. CODE R. § 8.324.4.16(A)(5). Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

370.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to New Mexico Medicaid. Defendants' representations regarding usual and customary charges to the public are material to New Mexico Medicaid's payment of claims. New Mexico's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused New Mexico's Medicaid program to pay false and/or fraudulent claims as described herein.

371.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of New Mexico's payment decision.

372.    As a result of Defendants' violations of N.M. STAT. ANN. § 27-14-4 and N.M. STAT. ANN. § 44-9-3 the State of New Mexico has been damaged.

373.    There are no bars to recovery under N.M. STAT. ANN. § 27-14-10(C), or in the alternative, Relator is an original source as defined therein. Relator possesses independent knowledge of Defendants' schemes, and his knowledge is based on his own investigation of Defendants' conduct. Relator has voluntarily provided the information on which the allegations are based to the State of New Mexico prior to bringing this action on behalf of himself and on behalf of the State of New Mexico.

374.    This Court is requested to accept pendent jurisdiction of these related state claims as they are predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of New Mexico.

375.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NEW MEXICO:

    (1)    Three times the amount of actual damages that the State of New Mexico has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $10,000 for each false claim that the Defendants presented or caused to be presented to the State of New Mexico;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to N.M. STAT. ANN. § 27-14-9, N.M. STAT. ANN. § 44-9-7, and any other applicable provision of law;

(2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

**X.     Count XXIV – New York False Claims Act**

376.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

377.    This is a *qui tam* action brought by Relator and State of New York to recover treble damages and civil penalties under the New York False Claims Act, N.Y. STATE FIN. LAW §§ 187–194.

378.    N.Y. STATE FIN. LAW § 189(1) provides liability for any person who

(a)     Knowingly presents, or causes to be presented a false and/or fraudulent claim for payment or approval;

(b)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

379.    Defendants have violated N.Y. STATE FIN. LAW § 189(1) by knowingly submitting false and/or fraudulent claims to New York's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

380.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to New York Medicaid. Defendants' representations regarding usual and customary charges to the public are material to New York's payment of Medicaid claims. New York's Medicaid program prohibits reimbursement in excess of the usual and customary charge

for a drug, and Defendants caused New York's Medicaid program to pay false and/or fraudulent claims as described herein.

381.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence New York Medicaid's payment decision.

382.    As a result of the Defendants' violations of N.Y. STATE FIN. LAW § 189, the State of New York has been damaged.

383.    There are no bars to recovery under N.Y. STATE FIN. LAW. § 190(9), and, or in the alternative, Relator is an original source as defined in § 188(7). Relator has independent knowledge of the information supporting these allegations and has voluntarily disclosed the information on which his allegations are based prior to prior to bringing this action on behalf of himself and on behalf of the State of New York pursuant to N.Y. STATE FIN. LAW § 190(2).

384.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of New York.

385.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NEW YORK:

(1)    Three times the amount of actual damages that the State of New York has sustained as a result of the fraudulent and illegal practices of Defendants;

(2)    A civil penalty of not less than $12,000 for each false claim that Defendants presented or caused to be presented to the State of New York;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To Relator:

> (1)     The maximum amount allowed pursuant to N.Y. State. Fin. Law § 190(6) and/or any other applicable provision of law;

> (2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

> (3)     An award of reasonable attorneys' fees and costs; and

> (4)     Such further relief as this Court deems equitable and just.

## Y.    Count XXV – North Carolina False Claims Act

386.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

387.    This is a *qui tam* action brought by Relator and the State of North Carolina to recover treble damages and civil penalties under the North Carolina False Claims Act, N.C. Gen. Stat. § 1-605 *et seq.*

388.    N.C. Gen. Stat. § 1-607(a) provides liability for any person who

> (1)     Knowingly presents or causes to be presented a false and/or fraudulent claim for payment or approval.

> (2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

389.    Defendants have violated N.C. Gen. Stat. § 1-607(a) by knowingly submitting false and/or fraudulent claims to North Carolina's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

390.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to North Carolina Medicaid. Defendants' representations regarding usual and customary charges to the public are material to North Carolina's payment of Medicaid

claims. North Carolina's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused North Carolina's Medicaid program to pay false and/or fraudulent claims as described herein.

391.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence North Carolina Medicaid's payment decision.

392.    As a result of Defendants' violations of N.C. GEN. STAT. § 1-607, the State of North Carolina has been damaged.

393.    There are no bars to recovery under N.C. GEN. STAT. § 1-611, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of North Carolina pursuant to N.C. GEN. STAT. § 1-608(b). Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

394.    This Court is requested to accept pendent jurisdiction over this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damages to the State of North Carolina.

395.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF NORTH CAROLINA:

(1)    Three times the amount of actual damages that the State of North Carolina has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of North Carolina;

(3)    Prejudgment interest; and

(4)     All costs incurred in bringing this action.

To RELATOR:

(1)     The maximum amount allowed pursuant to N.C. GEN. STAT. § 1-610 and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

### Z.     Count XXVI – Oklahoma Medicaid False Claims Act

396.     Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

397.     This is a *qui tam* action brought by Relator and the State of Oklahoma to recover treble damages and civil penalties under the Oklahoma Medicaid False Claims Act, OKLA. STAT. ANN. 63 § 5053 *et seq.*

398.     OKLA. STAT. ANN. 63 § 5053.1(B) provides liability for any person who

1.     Knowingly presents, or causes to be presented, to an officer or employee of the State of Oklahoma, a false and/or fraudulent claim for payment or approval;

2.     Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false and/or fraudulent claim paid or approved by the state.

399.     Defendants have violated OKLA. STAT. ANN. 63 § 5053.1(B) by knowingly submitting false and/or fraudulent claims to Oklahoma's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

400.     Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Oklahoma Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Oklahoma's payment of Medicaid claims. Oklahoma's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused Oklahoma's Medicaid program to pay false and/or fraudulent claims as described herein.

401.     Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence Oklahoma Medicaid's payment decision.

402.     As a result of Defendants' violations of OKLA. STAT. ANN. 63 § 5053.1(B), the State of Oklahoma has been damaged.

403.     There are no bars to recovery under OKLA. STAT. ANN. 63 § 5053.5, and, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Oklahoma pursuant to OKLA. STAT. ANN. 63 § 5053.2. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

404.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Oklahoma.

405.     WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF OKLAHOMA:

(1)     Three times the amount of actual damages that the State of Oklahoma has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)     A civil penalty of not less than $10,000 for each false claim that the Defendants presented or caused to be presented to the State of Oklahoma;

(3)     Prejudgment interest; and

(4)     All costs incurred in bringing this action.

TO RELATOR:

(1)     The maximum amount allowed pursuant to OKLA. STAT. ANN. 63 § 5053.4, and/or any other applicable provision of law;

(2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)     An award of reasonable attorneys' fees and costs; and

(4)     Such further relief as this Court deems equitable and just.

**AA.   Count XXVII – Rhode Island State False Claims Act**

406.   Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

407.   This is a *qui tam* action brought by Relator and the State of Rhode Island to recover treble damages and civil penalties under the Rhode Island State False Claims Act, R.I. GEN. LAWS § 9-1.1-1 *et seq.*

408.   R.I. GEN. LAWS § 9-1.1-3 provides liability for any person who

(1)     Knowingly presents, or causes to be presented a false and/or fraudulent claim for payment or approval;

(2)     Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

409.   Defendants have violated R.I. GEN. LAWS § 9-1.1-3 by knowingly submitting false and/or fraudulent claims to Rhode Island Medicaid that sought reimbursement in excess of

Defendants' usual and customary charge to the general public, which Rhode Island's Medicaid provider manual defines as inclusive of discounts. *See* Exhibit 59. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

410.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Rhode Island Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Rhode Island Medicaid's payment of claims. Rhode Island's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Rhode Island's Medicaid program to pay false and/or fraudulent claims as described herein.

411.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Rhode Island's payment decision.

412.    As a result of Defendants' violations of R.I. GEN. LAWS § 9-1.1-3, the State of Rhode Island has been damaged.

413.    There are no bars to recovery under R.I. GEN. LAWS § 9-1.1-4(e), or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Rhode Island pursuant to R.I. GEN. LAWS § 9-1.1-4(b). Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

414.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Rhode Island.

415.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF RHODE ISLAND:

    (1)    Three times the amount of actual damages that the State of Rhode Island has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Rhode Island;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To RELATOR:

    (1)    The maximum amount allowed pursuant to R.I. GEN. LAWS § 9-1.1-4(d) and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**BB.    Count XXVIII – Tennessee Medicaid False Claims Act**

416.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

417.    This is a *qui tam* action brought by Relator and the State of Tennessee to recover treble damages and civil penalties under the Tennessee Medicaid False Claims Act, TENN. CODE ANN. § 71-5-181 *et seq.*

418.    TENN. CODE ANN. § 71-5-182(a)(1) provides liability for any person who

    (A)    Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval under the Medicaid program;

(B)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim under the Medicaid program.

419.    Defendants have violated TENN. CODE ANN. § 71-5-182(a)(1) by knowingly submitting false and/or fraudulent claims to Tennessee's Medicaid program, TennCare, that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which TennCare's agreement with pharmacy providers defines as inclusive of discounts. *See* Exhibit 62 at 4. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

420.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to TennCare. Defendants' representations regarding usual and customary charges to the public are material to TennCare's payment of claims. TennCare prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused TennCare program to pay false and/or fraudulent claims as described herein.

421.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Tennessee's payment decision.

422.    As a result of Defendants' violations of TENN. CODE ANN. § 71-5-182(a)(1), the State of Tennessee has been damaged.

423.    There are no bars to recovery under TENN. CODE ANN. § 71-5-183(e)(2), or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Tennessee pursuant to TENN. CODE ANN. § 71-5-183(b)(1). Relator has direct and independent knowledge of the information on which these

allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

424.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Tennessee.

425.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against Defendants:

To the STATE OF TENNESSEE:

(1)    Three times the amount of actual damages that the State of Tennessee has sustained as a result of the fraudulent and illegal practices of the Defendants;

(2)    A civil penalty of not less than $25,000 for each false claim that Defendants presented or caused to be presented to the State of Tennessee;

(3)    Prejudgment interest; and

(4)    All costs incurred in bringing this action.

To RELATOR:

(1)    The maximum amount allowed pursuant to TENN. CODE ANN. § 71-5-183(d) and/or any other applicable provision of law;

(2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

(3)    An award of reasonable attorneys' fees and costs; and

(4)    Such further relief as this Court deems equitable and just.

## CC.    Count XXIX – Vermont False Claims Act

426.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

427.    This is a *qui tam* action brought by Relator and the State of Vermont to recover treble damages and civil penalties under the Vermont False Claims Act, VT. STAT. ANN. 32 § 630 *et seq*.

428.    VT. STAT. ANN. 32 § 631(a) provides that no person shall

    (1)    Knowingly present, or cause to be presented, a false and/or fraudulent claim for payment or approval;

    (2)    Knowingly make, use, or cause to be made or used, a false record or statement material to a false and/or fraudulent claim.

429.    Defendants have violated VT. STAT. ANN. 32 § 631(a) by knowingly submitting false and/or fraudulent claims to Vermont's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

430.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Vermont Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Vermont's payment of Medicaid claims. Vermont's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused Vermont's Medicaid program to pay false and/or fraudulent claims as described herein.

431.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence Vermont Medicaid's payment decision.

432.    As a result of Defendants' violations of VT. STAT. ANN. 32 § 631(a), the State of Vermont has been damaged.

433.     There are no bars to recovery under VT. STAT. ANN. 32 § 636, or in the alternative,

Relator is an original source as defined in VT. STAT. ANN. 32 § 630(5).  Relator has brought this

action on his own behalf and on behalf of the State of Vermont pursuant to VT. STAT. ANN. 32 §

632. Relator has direct and independent knowledge of the information on which these allegations

are based and has voluntarily provided the information to the State before filing an action based

on the information.

434.     This Court is requested to accept pendent jurisdiction of this related state claim as

it is predicated upon the exact same facts as the federal claim; Relator merely asserts separate

damage to the State of Vermont.

435.     WHEREFORE, Relator respectfully requests this Court to award the following

damages to the following parties and against the Defendants:

To the STATE OF VERMONT:

    (1)     Three times the amount of actual damages that the State of Vermont has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)     A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Vermont;

    (3)     Prejudgment interest; and

    (4)     All costs incurred in bringing this action.

To RELATOR:

    (1)     The maximum amount allowed pursuant to VT. STAT. ANN. 32 § 635 and/or any other applicable provision of law;

    (2)     Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)     An award of reasonable attorneys' fees and costs; and

    (4)     Such further relief as this Court deems equitable and just.

**DD.    Count XXX – Virginia Fraud Against Taxpayers Act**

436.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

437.    This is a *qui tam* action brought by Relator and the Commonwealth of Virginia to recover treble damages and civil penalties under the Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.1 *et seq.*

438.    VA. CODE ANN. § 8.01-216.3 provides liability for any person who

1.    Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

2.    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim.

439.    Defendants have violated VA. CODE ANN. § 8.01-216.3 by knowingly submitting false and/or fraudulent claims to the Commonwealth's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

440.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Virginia Medicaid. Defendants' representations regarding usual and customary charges to the public are material to Virginia's payment of Medicaid claims. Virginia's Medicaid program prohibits reimbursement in excess of the usual and customary charge for a drug, and Defendants caused Virginia's Medicaid program to pay false and/or fraudulent claims as described herein.

441.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence Virginia Medicaid's payment decision.

442.    As a result of the Defendants' violations of VA. CODE ANN. § 8.01-216.3, the Commonwealth of Virginia has been damaged.

443.    There are no bars to recovery under VA. CODE ANN. § 8.01-216.8, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the Commonwealth of Virginia pursuant to VA. CODE ANN. § 8.01-216.5. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

444.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the Commonwealth of Virginia.

445.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the COMMONWEALTH OF VIRGINIA:

    (1)    Three times the amount of actual damages that the Commonwealth of Virginia has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the Commonwealth of Virginia;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

To Relator:

    (1)    The maximum amount allowed pursuant to Va. Code Ann. § 8.01-216.7 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

**EE.    Count XXXI – Washington State Medicaid Fraud False Claims Act**

446.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

447.    This is a *qui tam* action brought by Relator and the State of Washington to recover treble damages and civil penalties under the Washington State Medicaid Fraud False Claims Act, Wash. Rev. Code § 74.66.005 *et seq.*

448.    Wash. Rev. Code § 74.66.020(1) provides liability for any person who-

    (a)    Knowingly presents, or causes to be presented, a false and/or fraudulent claim for payment or approval;

    (b)    Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false and/or fraudulent claim;

449.    Defendants have violated Wash. Rev. Code § 74.66.020(1) by knowingly submitting false and/or fraudulent claims to Washington's Medicaid program that sought reimbursement in excess of Defendants' usual and customary charge to the general public, which Washington Medicaid's Provider Guide defines as inclusive of discounts. *See* Exhibit 67 at 80. Moreover, Defendants falsely certified that the submitted claims contained information that was true, accurate, and complete.

450.    Defendants knowingly reported inflated usual and customary charges for drugs when they submitted claims to Washington's Medicaid program. Defendants' representations

regarding usual and customary charges to the public are material to Washington Medicaid's payment of claims. Washington's Medicaid program prohibits reimbursement in excess of the usual and customary charge of a drug, and Defendants caused Washington's Medicaid program to pay false and/or fraudulent claims as described herein.

451.    Given the structure of the health care system, the false statements, representations, and/or records made by the Defendants had the potential to influence the State of Washington's payment decision.

452.    As a result of the Defendants' violations of WASH. REV. CODE § 74.66.020(1), the State of Washington has been damaged.

453.    There are no bars to recovery under WASH. REV. CODE § 74.66.080, or in the alternative, Relator is an original source as defined therein.  Relator has brought this action on his own behalf and on behalf of the State of Washington pursuant to WASH. REV. CODE § 74.66.050. Relator has direct and independent knowledge of the information on which these allegations are based and has voluntarily provided the information to the State before filing an action based on the information.

454.    This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the same facts as the federal claim; Relator merely asserts separate damage to the State of Washington.

455.    WHEREFORE, Relator respectfully requests this Court to award the following damages to the following parties and against the Defendants:

To the STATE OF WASHINGTON:

(1)    Three times the amount of actual damages that the State of Washington has sustained as a result of the fraudulent and illegal practices of the Defendants;

    (2)    A civil penalty of not less than $11,000 for each false claim that the Defendants presented or caused to be presented to the State of Washington;

    (3)    Prejudgment interest; and

    (4)    All costs incurred in bringing this action.

TO RELATOR:

    (1)    The maximum amount allowed pursuant to WASH. REV. CODE § 74.66.070 and/or any other applicable provision of law;

    (2)    Reimbursement for reasonable expenses that Relator incurred in connection with this action;

    (3)    An award of reasonable attorneys' fees and costs; and

    (4)    Such further relief as this Court deems equitable and just.

## FF.    Count XXXII – Common Fund Relief

456.    Relator realleges and hereby incorporates by reference each and every allegation contained in all paragraphs of this Complaint.

457.    While the states possessing *qui tam* statutes have a regulatory scheme for rewarding Relator for coming forward, those that have none will potentially receive a windfall with little or no investigation or commitment of time or resources to the recovery. The common-fund doctrine preserves the right of the litigant or counsel to an award from the common fund generated. The United States Supreme Court and many other courts have addressed this remedy. *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980):

> Since the decisions in *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1882), and *Central Railroad & Banking Co. v. Pettuss*, 113 S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. [citations omitted]. The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees v. Greenough*, supra 105 U.S., at 532-537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees [citations omitted]. The doctrine rests upon the perception that persons who obtain the benefit of the lawsuit without contributing to its cost are

unjustly enriched at the successful litigant's expense [citation omitted]. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionally among those benefitted by this suit. [citations omitted].

458.    Other courts have also recognized the common fund doctrine for situations such as those that may arise in this case.  *See e.g., In re Smithkline Beckman Corp. Securities Litig.*, 751 F. Supp. 525, 531 (E.D. Pa. 1990) (citing *Boeing* in support of decision to award common fund relief); *see also* "The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation," 31 Ind. L. Rev. 313, 337–38 (1998).  Relator respectfully requests this Court to award him a percentage share from the common fund generated by his actions.

## XII.    DEMAND FOR JURY TRIAL

459.    Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury.

## XIII.    DOCUMENTARY EVIDENCE

460.    The documentary evidence referenced herein consists of the following.

| EXHIBIT NO. | DESCRIPTION | BATES NUMBERS |
|---|---|---|
| 1 | January 2016 letter to pharmacy customers | JDOE0000001 |
| 2 | Pharmacy Operating Agreement between Target Corporation and CVS Pharmacy, Inc. | JDOE0000002-64 |
| 3 | Frequently Asked Questions regarding discontinuation of Target's Prescription Savings Program and implementation of CVS's ScriptSave program | JDOE0000065-66 |
| 4 | January 27, 2016 email to CVS pharmacists with instructions for processing claims | JDOE0000067-68 |
| 5 | Medi-Cal Pharmacy Claim Form 30-1 | JDOE0000069 |
| 6 | Medi-Cal Form MC 3152 | JDOE0000070-71 |
| 7 | Medi-Cal Pharmacy Provider Manual, Reimbursement | JDOE0000072-85 |
| 8 | Colorado Medical Assistance Program, General Provider Information | JDOE0000086-87 |
| 9 | Delaware Provider Policy Manual, Section 4 | JDOE0000088-90 |
| 10 | Delaware Provider Policy Manual, Section 1 | JDOE0000091-94 |
| 11 | Florida Medicaid Prescribed Drugs Services Coverage, Limitations, and Reimbursement Handbook, Chapter 3 | JDOE0000095-98 |
| 12 | Florida Medicaid Prescribed Drugs Services Coverage, Limitations, and Reimbursement Handbook, Chapter 5 | JDOE0000099-100 |

| 13 | Georgia Department of Community Health, Policies and Procedures for Pharmacy Services | JDOE0000101-03 |
|----|----|----|
| 14 | Georgia Department of Community Health, Division of Medical Assistance, Statement of Participation | JDOE0000104-08 |
| 15 | Hawaii Medicaid Provider Manual, Chapter 19, Pharmacy Services | JDOE0000109-12 |
| 16 | Hawaii Medicaid Provider Manual, Chapter 2, Provider Requirements | JDOE0000113-14 |
| 17 | Hawaii Medicaid Prescription Drug Claim Form 204 | JDOE0000115 |
| 18 | Illinois Medicaid Handbook for Providers of Pharmacy Services, Chapter P-200 | JDOE0000116-20 |
| 19 | Illinois Medicaid Handbook for Providers of Medical Services, Chapter 100 | JDOE0000121-25 |
| 20 | Indiana Health Coverage Programs, Provider Reference Module, Pharmacy Service, Section 2 | JDOE0000126-29 |
| 21 | Indiana Health Coverage Programs Drug Claim Form | JDOE0000130 |
| 22 | Iowa Medicaid Provider Manual, Chapter III, Provider Specific Policies, Prescribed Drugs | JDOE0000131-42 |
| 23 | Iowa Medicaid Point of Sale Agreement | JDOE0000143 |
| 24 | Louisiana Medicaid Services Manual, Chapter 37, Pharmacy Benefits Management Services Manual | JDOE0000144-46 |
| 25 | Louisiana Medicaid PE-50 Addendum – Provider Agreement | JDOE0000147-48 |
| 26 | Louisiana Medicaid EDI General Companion Guide | JDOE0000149-51 |
| 27 | Louisiana Medicaid Services Manual, Chapter 1, General Information and Administration Provider Manual | JDOE0000152-58 |
| 28 | Maryland Pharmacy Programs Claims Processing Manual, Section VII | JDOE0000159-61 |
| 29 | Maryland Pharmacy Programs Claims Processing Manual, Appendix A | JDOE0000162-69 |
| 30 | Maryland Medical Assistance Programs Provider Agreement | JDOE0000170-75 |
| 31 | MassHealth Provider Manual Series, Subchapter 5, Part 3, Billing MassHealth | JDOE0000176-77 |
| 32 | MassHealth Pharmacy Online Processing System (POPS) Billing Guide | JDOE0000178-98 |
| 33 | Michigan Medicaid Provider Manual, Pharmacy | JDOE0000199-200 |
| 34 | Michigan Medicaid Provider Manual, General Information for Providers | JDOE0000201-03 |
| 35 | Minnesota Health Care Programs Provider Agreement | JDOE0000204-07 |
| 36 | Montana DPHHS Prescription Drug Program Manual | JDOE0000208-12 |
| 37 | Montana Medicaid Pharmacy Claim Form MA-5 | JDOE0000213 |
| 38 | Nevada Medicaid State Plan, Section 4.19 - Payment for Services, Attachment 4.19-B | JDOE0000214-15 |

| 39 | Nevada Medicaid and Nevada Check Up Pharmacy Manual | JDOE0000216-19 |
|---|---|---|
| 40 | Nevada Medicaid and Nevada Check Up Pharmacy Manual, Appendix A | JDOE0000220-27 |
| 41 | Nevada Medicaid and Nevada Check Up Pharmacy Manual, Appendix B | JDOE0000228-40 |
| 42 | Nevada Medicaid Provider Contract | JDOE0000241-45 |
| 43 | Nevada Medicaid Services Manual, Addendum | JDOE0000246-50 |
| 44 | Nevada Medicaid Services Manual, Section 100, Medicaid Program | JDOE0000251-54 |
| 45 | New Hampshire Medicaid Pharmacy Provider Manual § 6.0 Provider Reimbursement | JDOE0000255-68 |
| 46 | New Hampshire Medicaid Pharmacy Provider Manual, Appendix A – Universal Claim Form | JDOE0000269-82 |
| 47 | New Hampshire Medicaid Pharmacy Provider Manual, Appendix B – Payer Specifications | JDOE0000283-96 |
| 48 | New Hampshire Medicaid Enrollment Application: Group Provider, § 6 Electronic Transaction Submissions | JDOE0000297-317 |
| 49 | New Hampshire Medicaid Enrollment Application: Group Provider, § 9 Application Signature | JDOE0000318-38 |
| 50 | New York State Medicaid Program, Pharmacy Manual, Policy Guidelines | JDOE0000339-40 |
| 51 | New York State eMedNY Billing Guidelines, Pharmacy | JDOE0000341-43 |
| 52 | New York State Medicaid Program, Information for all Providers, General Billing | JDOE0000344-52 |
| 53 | North Carolina DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy (Attachment A: Claims Related Information) | JDOE0000353-59 |
| 54 | North Carolina DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy (Attachment H: Summary of Point-of-Sale Codes and Other Information for Current Claim Formant) | JDOE0000360-66 |
| 55 | North Carolina Tracks NCMMIS NCPDP Pharmaceutical Drug Claims Version D.0 Companion Guide | JDOE0000367-68 |
| 56 | North Carolina DMA, Clinical Coverage Policy No: 9 Outpatient Pharmacy (Attachment F: Summary of Billing Requirements) | JDOE0000369-75 |
| 57 | North Carolina DHHS Provider Administrative Participation Agreement | JDOE0000376-82 |
| 58 | Oklahoma Health Care Authority, Provider Billing and Procedure Manual | JDOE0000383-96 |
| 59 | Rhode Island Medicaid Provider Manual, Pharmacy, Pharmacy Coverage Policy, Pharmacy Billing Procedure | JDOE0000397-99 |
| 60 | Rhode Island Provider Agreement Form | JDOE0000400-03 |
| 61 | Tennessee Medicaid Pharmacy Claims Submission Manual | JDOE0000404-10 |

| 62 | Tennessee Medicaid Participating Pharmacy Agreement for Ambulatory and Long Term Care Providers | JDOE0000411-52 |
|---|---|---|
| 63 | Vermont Medicaid NCPDP Version D. Ø Payer Sheet | JDOE0000453-84 |
| 64 | Department of Vermont Health Access General Provider Agreement | JDOE0000485-91 |
| 65 | Virginia Medicaid Pharmacy Manual, Chapter IV, Covered Services and Limitations | JDOE0000492-94 |
| 65.1 | Virginia Medicaid Pharmacy Manual, Billing, Chapter V, Billing Procedures | JDOE0000618-22 |
| 66 | Virginia DMAS Pharmacy Claim Form, DMAS-173 | JDOE0000495-96 |
| 67 | Washington Apple Health, Prescription Drug Program Provider Guide | JDOE0000497-502 |
| 68 | Washington State Pharmacy Statement (525-106) | JDOE0000503 |
| 69 | Electronic Data Interchange (EDI) Agreement | JDOE0000504-06 |
| 70 | October 2006 CMS Memorandum | JDOE0000507-08 |
| 71 | CMS Form 1450 | JDOE0000509-10 |
| 72 | Relator's photograph of pricing information for Advair 100-50 Diskus, 60 Each, NDC: 00173-0695-00 | JDOE0000511 |
| 73 | Relator's photograph of pricing information for Advair 500-50 Diskus, 60 Each NDC: 00173-0697-00 | JDOE0000512 |
| 74 | Relator's photograph of pricing information for Butalbital-Acetaminophen-Caffeine 50-325-40 MG, 90 Each, NDC: 00603-2544-21 | JDOE0000513 |
| 75 | Relator's photograph of pricing information for Ciprofloxacin HCL 500 MG Tab, 28 Each, NDC: 55111-0127-01 | JDOE0000514 |
| 76 | Relator's photograph of pricing information for Clobetasol 0.05% Cream, 15 MG, NDC: 50383-0267-15 | JDOE0000515 |
| 77 | Relator's photograph of pricing information for Clobetasol 0.05% Ointment, 15 GM, NDC: 50383-0268-15 | JDOE0000516 |
| 78 | Relator's photograph of pricing information for Clobetasol 0.05% Solution, 50 ML, NDC:50383-0266-50 | JDOE0000517 |
| 79 | Relator's photograph of pricing information for Colcrys 0.6 MG Tablet, 90 Each, NDC: 64764-0119-07 | JDOE0000518 |
| 80 | Relator's photograph of pricing information for Diclofenac Sod EC 75 MG Tablet, 60 Each, NDC: 16571-0201-06 | JDOE0000519 |
| 81 | Relator's photograph of pricing information for Doxazosin Mesylate 4 MG Tablet, 90 Each, NDC: 00378-4024-01 | JDOE0000520 |
| 82 | Relator's photograph of pricing information for Doxazosin Mesylate 8 MG Tablet, 90 Each, NDC: 00378-4028-01 | JDOE0000521 |

| 83 | Relator's photograph of pricing information for Duloxetine HCL DR 30 MG CAP, 90 Each, NDC: 60505-2996-03 | JDOE0000522 |
|---|---|---|
| 84 | Relator's photograph of pricing information for Humalog 100 Units/ML Kwikpen, 15 ML, NDC: 00002-8799-59 | JDOE0000523 |
| 85 | Relator's photograph of pricing information for Januvia 100 MG Tablet, 90 Each, NDC: 00006-0277-31 | JDOE0000524 |
| 86 | Relator's photograph of pricing information for Levothyroxine 25 MCG Tablet, 90 Each, NDC: 00378-1800-01 | JDOE0000525 |
| 87 | Relator's photograph of pricing information for Levothyroxine 50 MCG Tablet, 90 Each, NDC: 00378-1803-10 | JDOE0000526 |
| 88 | Relator's photograph of pricing information for Levothyroxine 88 MCG Tablet, 90 Each, NDC: 00378-1807-10 | JDOE0000527 |
| 89 | Relator's photograph of pricing information for Levothyroxine 100 MCG Tablet, 90 Each, NDC: 00378-1809-10 | JDOE0000528 |
| 90 | Relator's photograph of pricing information for Levothyroxine 112 MCG Tablet, 90 Each, NDC: 00378-1811-10 | JDOE0000529 |
| 91 | Relator's photograph of pricing information for Levothyroxine 137 MCG Tablet, 90 Each, NDC: 00378-1823-01 | JDOE0000530 |
| 92 | Relator's photograph of pricing information for Levothyroxine 150 MCG Tablet, 90 Each, NDC: 00378-1815-10 | JDOE0000531 |
| 93 | Relator's photograph of pricing information for Levothyroxine 175 MCG Tablet, 90 Each, NDC: 00378-1817-10 | JDOE0000532 |
| 94 | Relator's photograph of pricing information for Levothyroxine 200 MCG Tablet, 90 Each, NDC: 00378-1819-01 | JDOE0000533 |
| 95 | Relator's photograph of pricing information for Novolog 100 Units/ML Flexpen, 15 ML, NDC: 00169-6339-10 | JDOE0000534 |
| 96 | Relator's photograph of pricing information for Oxycontin 10 MG Tablet, 90 Each, NDC: 59011-0410-10 | JDOE0000535 |
| 97 | Relator's photograph of pricing information for Oxycontin 20 MG Tablet, 90 Each, NDC: 59011-0420-10 | JDOE0000536 |
| 98 | Relator's photograph of pricing information for Oxycontin 30 MG Tablet, 90 Each, NDC: 59011-0430-10 | JDOE0000537 |

| 99 | Relator's photograph of pricing information for Spiriva 18 MCG CP-Handihaler, 30 Each, NDC: 00597-0075-41 | JDOE0000538 |
|---|---|---|
| 100 | Relator's photograph of pricing information for Ventolin HFA 90 MCG Inhaler, 18 GM, NDC: 00173-0682-20 | JDOE0000539 |
| 101 | Florida MAC List (excerpted) | JDOE0000540-47 |
| 101.1 | Florida WAC List (excerpted) | JDOE0000623-24 |
| 102 | Georgia MAC List (excerpted) | JDOE0000548-53 |
| 103 | Illinois MAC List (excerpted) | JDOE0000554-59 |
| 104 | Michigan MAC List (excerpted) | JDOE0000560-65 |
| 105 | Nevada MAC List (excerpted) | JDOE0000566-69 |
| 106 | New Mexico MAC List (excerpted) | JDOE0000570-75 |
| 107 | New York Medicaid MRAs (excerpted) | JDOE0000576-99 |
| 108 | Tennessee MAC List (excerpted) | JDOE0000600-05 |
| 109 | Prescription register, receipt, and Virginia Medicaid coverage information for Patient One | JDOE0000606-08 |
| 110 | Prescription register, receipt, and Medicare Part D coverage information for Patient Two | JDOE0000609-11 |
| 111 | Prescription register, receipt, and Medicare Part D coverage information for Patient Three | JDOE0000612-14 |
| 112 | Prescription register, receipt, and Medicare Part D coverage information for Patient Four | JDOE0000615-17 |
| 113 | Department of Health Care Finance Medicaid Provider Agreement | JDOE0000618-25 |

Respectfully submitted,

BERG & ANDROPHY

___/s/ Joel M. Androphy_____
Joel M. Androphy
D.C. Bar No. 999769
State Bar No. 01254700
Janis G. Gorton (*Pro Hac Vice* admission pending)
State Bar No. 24071063
Berg & Androphy
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2016 a true and correct copy of this Original Complaint was delivered to the United States Attorney's Office and the Department of Justice in Washington, D.C. and the Attorneys General of the Qui Tam States via electronic mail and via the United States Mail, certified, return receipt requested.

___/s/ Joel M. Androphy_____
Joel M. Androphy